## COMMONWEALTH *vs.* RANDALL W. TRAPP.

Middlesex. February 8, 1996. - July 31, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Practice, Criminal,* Assistance of counsel, Instructions to jury, Presumptions and burden of proof, Argument by prosecutor, Jury and jurors, Discovery, Witness, Capital case, Disclosure of evidence. *Constitutional Law,* Assistance of counsel. *Mental Impairment. Intoxication. Malice. Homicide. Intent. Due Process of Law,* Defendant wearing prison clothing at trial. *Witness,* Expert.

The psychiatric examination (*Blaisdell* interview) pursuant to Mass. R. Crim. P. 14 (b) (2) (B), in a criminal case in which the defendant has placed criminal responsibility in issue, is not a "critical stage" of the criminal process such that the defendant has the right to have counsel present during the examination. [358-359]

At the trial of a murder indictment in which the defendant raised the issue of his criminal responsibility, the judge did not abuse his discretion in denying defense counsel's request to be present during the psychiatric examination of the defendant pursuant to Mass. R. Crim. P. 14 (b) (2) (B). [359]

At the trial of a murder indictment, the judge's instructions to the jury on criminal responsibility, considered as a whole, were not erroneous. [359-360]

At the trial of a first degree murder indictment there was no substantial likelihood of a miscarriage of justice in the judge's failure to instruct, in accord with the later decided *Commonwealth* v. *Sama,* 411 Mass. 293 (1991), that the defendant's intoxication was relevant to the third prong of malice, where on the evidence presented there could be no serious contention that there was no specific intent to kill or to do grievous bodily injury and where there was little evidence of the defendant's intoxication. [360]

At a first degree murder trial there was no substantial likelihood of a miscarriage of justice created by the judge's instructions defining extreme atrocity or cruelty. [361]

On appeal from a conviction of murder in the first degree the record did not support the defendant's claim that he was improperly compelled to stand trial in official prison clothing. [361-362]

At the trial of a criminal case the prosecutor's remark during closing argument that the experts who testified for the defense had been hired by the defense was correct, was a proper subject for closing argument, and was not prejudicial to the defendant. [362]

During jury deliberation at a criminal trial, the judge did not err in his

method of addressing an issue of possible extraneous influence on the jurors. [362-363]

At a criminal trial, the defendant demonstrated no prejudice from the judge's allowing reciprocal discovery to the Commonwealth of certain medical and scientific tests conducted regarding the defendant's psychological condition. [363]

At a criminal trial, the judge did not abuse his discretion in denying defense counsel's motion for a continuance and allowing the prosecution to add two medical experts to its witness list on the day of jury empanelment, where the judge determined that the defendant was not unduly surprised and that ample time existed to allow defense preparation for cross-examination. [363-364]

No reason appeared on the record of a first degree murder trial for this court to exercise its power under G. L. c. 278, § 33E, to reverse or reduce the verdict. [364-365]    .

INDICTMENTS found and returned in the Superior Court Department on October 20, 1981.

Following review by this court, 396 Mass. 202 (1985), the cases were tried before *John P. Sullivan, J.*, and a motion for a new trial was heard by him.

*Charles W. Rankin* for the defendant.

*David W. Cunis*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. In October, 1987, a Middlesex County jury returned a guilty verdict against the defendant, Randall W. Trapp, on an indictment charging murder in the first degree. The defendant had been retried after we overturned his initial conviction on the ground that improperly admitted character evidence caused prejudice. See *Commonwealth* v. *Trapp*, 396 Mass. 202 (1985).

The evidence regarding the homicide itself and identification of the perpetrator was substantially the same at both trials. On the evidence submitted at the second trial, the jury could have concluded that Trapp encountered one Lawrence Norton at a bar in Boston on the night of May 7, 1981. Trapp accompanied Norton to a house in Stoneham where Norton lived as a tenant. In the early morning hours of May 8, 1981, Norton's landlord, who lived downstairs in the same house, heard a loud thump emanating from Norton's bedroom. Soon thereafter a man wielding a knife and covered in blood, whom the landlord identified as Trapp, burst into the landlord's apartment. Trapp demanded the landlord's money and

automobile keys. The landlord complied. The landlord, against his will, accompanied Trapp to the landlord's mother's automobile, but then was able to escape to a neighbor's house. Trapp fled in the automobile.

The landlord called the police, and on returning to his home, he and the police subsequently found Norton dead, lying in a pool of blood in his bedroom, stabbed eighteen times. Shortly after the time of the killing, a gasoline station attendant saw Trapp, covered in blood, in the stolen car.[1] Police later located the landlord's mother's automobile and found evidence that Trapp had driven it in his flight. Police arrested Trapp on May 26, 1981.[2]

The second trial centered around the prosecution's ability to prove that Trapp was criminally responsible for his actions at the time of the homicide. The seven-day trial included testimony by seven experts on the issue of the defendant's criminal responsibility, four for the defense and three for the prosecution. The defense also presented the testimony of several lay witnesses who had known Trapp before the killing. These lay witnesses described Trapp's allegedly bizarre behavior on other occasions prior to the homicide. The jury deliberated for two days, asked one question during that time, and returned a special verdict finding Trapp guilty of murder in the first degree based on extreme atrocity or cruelty.

1. *Right to counsel at* Blaisdell *interview.* When a criminal defendant notifies the Commonwealth that criminal responsibility will be contested at trial, the Commonwealth may have an expert interview the defendant with respect to criminal responsibility issues. See Mass. R. Crim. P. 14 (b) (2) (B), 378 Mass. 874 (1979); *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 767-769 (1977). Prior to the examination, Trapp requested that his counsel be present during that interview. He asserts that the judge's denial of that motion violated his right to assistance of counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution.

The Sixth Amendment provides a right to counsel at every "critical stage" of the criminal process, and so a person accused has that right at postarraignment line-ups, but not at

---

[1]The attendant identified Trapp at trial.

[2]A more elaborate description of the facts is found in *Commonwealth* v. *Trapp,* 396 Mass. 202 (1985).

postarraignment photographic identification sessions. Compare *United States* v. *Wade,* 388 U.S. 218, 236-237 (1967), and *Gilbert* v. *California,* 388 U.S. 263, 269-272 (1967), with *United States* v. *Ash,* 413 U.S. 300, 321 (1973). In *Commonwealth* v. *Delaney,* 404 Mass. 1004, 1004-1005 (1989), we expressly left open the issue whether a *Blaisdell* interview is a critical stage requiring that a videotape of such an interview be made. We did not consider the right of counsel to be present at the interview. Cf. *Estelle* v. *Smith,* 451 U.S. 454, 470 n.14 (1981) (expressly reserving this issue). See also the exhaustive analysis in *United States* v. *Byers,* 740 F.2d 1104 (D.C. Cir. 1984) (en banc) (plurality opinion). Although the decision to undergo psychiatric evaluation is a critical stage, see *Estelle* v. *Smith, supra* at 470, the interview itself is not. *Byers, supra* at 1118-1121. We accept this view.

Trial counsel requested only that he be physically present at the interview. The alternative of videotaping such interviews was not raised at trial. While we agree with the *Byers* plurality that videotaping might be a sound idea, this issue is not before us. See *id.* at 1121. Cf. *Commonwealth* v. *Diaz,* 422 Mass. 269, 271-273 (1996) (videotaping of prearraignment custodial interrogations); *Commonwealth* v. *Fryar,* 414 Mass. 732, 742 n.8 (1993) (same). When individual circumstances warrant, criminal defendants remain protected by the judge's discretion to allow defense counsel to attend the *Blaisdell* interview, or to require videotaping. See *Delaney, supra* at 1005. There is no abuse of that discretion shown, and, hence, no error.

2. *Instructional Errors.*

a. *Criminal responsibility.* Trapp's appellate counsel assigns error to the judge's instructions regarding criminal responsibility. In light of trial counsel's lack of objection to the charge, we examine any error pursuant to G. L. c. 278, § 33E (1994 ed.). We look to the entire charge, *Commonwealth* v. *Torres,* 420 Mass. 479, 490 (1995), and do not require trial judges to use any particular words in their instructions so long as they convey the legal concepts properly, *id.* at 484, citing *Commonwealth* v. *Sinnott,* 399 Mass. 863, 878 (1987).

The judge began his instruction entirely properly, reciting the definition of lack of criminal responsibility from *Commonwealth* v. *McHoul,* 352 Mass. 544, 547 (1967), and stating that the Commonwealth had the burden to prove beyond a

reasonable doubt that Trapp was criminally responsible, see *Commonwealth* v. *Kostka,* 370 Mass. 516, 536-537 (1976). The judge then elaborated on these concepts, and on occasion used "finding language" that has the potential to reverse the burden of proof. See, e.g., *Commonwealth* v. *Adorno,* 407 Mass. 428, 430 (1990). Read as a whole this charge, however, was infused with and surrounded by proper statements of the allocation of the burden and the standard of proof. See *Commonwealth* v. *Roberts, ante* 17, 18-19 (1996). See also *Commonwealth* v. *Goudreau,* 422 Mass. 731, 737-739 (1996) (model charge). There was no error.

b. *Intoxication and third prong of malice.* This case came to trial shortly after the decision of *Commonwealth* v. *Grey,* 399 Mass. 469 (1987). Counsel and the judge discussed the implications of that opinion, and the judge instructed the jury that any intoxication or drug use was relevant to premeditation, extreme atrocity or cruelty, and to the first two prongs of malice. While Trapp's direct appeal was pending, we decided *Commonwealth* v. *Sama,* 411 Mass. 293 (1991), holding that alcohol and drug consumption were relevant to the third prong of malice because alcohol and drug use can affect the subjective knowledge of the defendant. *Id.* at 296-299. Appellate counsel asserts that Trapp should have had the benefit of a *Sama* instruction.

Trial counsel did not object on this score, and so we look only for any substantial likelihood of a miscarriage of justice. The jury returned their verdict of murder in the first degree on the theory of extreme atrocity or cruelty, expressly rejecting a premeditation theory. This case is therefore not one in which error in a third-prong instruction is rendered harmless because a premeditation verdict makes clear that the jury did in fact base their verdict on the (properly instructed) first prong of malice. See, e.g., *Commonwealth* v. *Judge,* 420 Mass. 433, 441-442 (1995); *Commonwealth* v. *Wallace,* 417 Mass. 126, 134-135 (1994). Nevertheless, on the facts here, with a victim stabbed eighteen times, it cannot be contended seriously that there was not either a specific intent to kill or specific intent to do grievous bodily injury. There was only the smallest iota of evidence that Trapp was intoxicated at all, and trial counsel argued intoxication and Trapp's mental state to the jury with respect to the extreme atrocity or cruelty theory. There is no substantial likelihood that a miscarriage of justice occurred.

c. Hunter *error.* Trapp cites our decision in *Commonwealth* v. *Hunter,* 416 Mass. 831, 837 (1994), and asserts that the judge's instructions defining extreme atrocity or cruelty were impermissibly vague. The judge did provide the jury with a list of "factors" to consider in deciding the issue of extreme atrocity or cruelty. Within that list, after describing some of the factors, the judge stated, "You may look to other evidence . . . . [S]ome of the other relevant and significant factors you should consider are . . . ." After finishing a list of factors the judge concluded: "So in the final analysis, the issue is left for you to determine if the mode of inflicting death was so shocking as to amounts [*sic*] to extreme atrocity or cruelty." We evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words. The language to which Trapp points is taken out of context, and the charge as a whole properly focused the attention of a reasonable juror. See *Commonwealth* v. *Rosa,* 422 Mass. 18, 31-32 (1996) (instructions that followed list of factors focused jury attention on the factors alone). There was no objection on this score at trial, and there was no substantial likelihood of a miscarriage of justice.[3]

3. *Miscellaneous.* The defendant assigns numerous other points of error. We address them seriatim.

a. *Trial in prison garb.* Appellate counsel asserts that the judge improperly compelled Trapp to stand trial in prison clothing. See *Estelle* v. *Williams,* 425 U.S. 501 (1976); *Commonwealth* v. *Jackson,* 388 Mass. 98 (1983). At that point, the judge ordered jury empanelment to begin on a Friday afternoon, the record indicates an objection by trial counsel on the basis that Trapp was wearing the "clothes he normally

[3]We note also that this trial occurred before the decision in *Commonwealth* v. *Hunter,* 416 Mass. 831 (1994), and that the rule in *Hunter* applies only prospectively. See *Commonwealth* v. *Semedo,* 422 Mass. 716, 726 (1996).

Trapp also claims that it was error for the judge not to expressly tell the jury that the degree of murder was to be found by them, especially because the judge did expressly state that the jury should return a verdict of the highest degree of guilt that the evidence would support beyond a reasonable doubt. Although we believe that the requested instruction is the preferred practice, we have never required it. See, e.g., *Commonwealth* v. *Gaskins,* 419 Mass. 809, 813 (1995); *Commonwealth* v. *Smiledge,* 419 Mass. 156, 161 (1994) (claim of error in failing to so instruct was "meritless"). In the absence of an objection at trial, we decline to consider the defendant's invitation to set down a prospective common law rule.

wears at MCI Gardner." There is nothing in the record to indicate that this clothing was official garb for incarcerated persons, and there is therefore no record support for this claim of error.

b. *Prosecutor's closing argument.* The prosecutor, during his closing, stated that the experts who testified for the defense had been hired by the defense. This is a proper subject for closing argument. *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 511 (1992), citing *Commonwealth* v. *O'Brien*, 377 Mass. 772, 777-778 (1979). Trapp correctly notes, however, that the prosecutor neglected to lay any foundation regarding this argument. No expert was questioned as to whether the defense had provided compensation for testimony. Closing argument should comment on the evidence and inferences drawn from the evidence, and may not touch matters not in evidence. *Commonwealth* v. *Kozec*, 399 Mass. 514, 516-517 & n.2 (1987). Nevertheless, these comments were not objected to, and there was no prejudice. The docket discloses that defense counsel received approval to expend funds to hire these experts. The prosecutorial comment was not false according to official documents in the record, and the relevant portion of the prosecutor's closing was entirely correct. Compare *O'Brien, supra* at 777-778 (disapproving use of term "hired gun" to describe defense expert).[4]

c. *Extraneous influences on jurors.* On the Monday morning that closing arguments were set to begin, one juror related to a court officer that on returning home from court the previous Friday, he learned that a friend of the victim's sister had telephoned the juror's house and asked how the trial was going. At a hearing with the juror and both counsel, which the judge conducted on the Monday, it became clear that the juror's wife had taken the telephone call, and that when she told him of it the juror had immediately put a stop to any conversation on the subject. The judge specifically asked if the juror had spoken to any other person about the incident, and the juror stated that he had not. In coming forward the juror did exactly what he was supposed to do. In light of the individualized inquiry, the lack of objection of either counsel after the voir dire, and the judge's discretion in addressing issues of extraneous influence on jurors discovered during trial,

---

[4]Two other claims of prosecutorial misconduct in closing argument are without merit.

the judge too did exactly what he was supposed to do. See, e.g., *Commonwealth* v. *Samuel*, 398 Mass. 93, 96 (1986). See also *Commonwealth* v. *Kamara*, 422 Mass. 614, 615 (1996).

d. *Prosecution discovery.* Before the second trial, defense counsel had several medical and scientific tests conducted regarding the defendant's psychological condition. The Commonwealth moved to discover the results of tests conducted for the defendant in November, 1986, and a Brain Electrical Activity Mapping (BEAM) test given in 1987. The judge, over objection, allowed that discovery.

In criminal cases, reciprocal discovery allows the prosecution to obtain "statements of persons, or reports of physical or mental examinations of any person or of scientific tests or experiments," Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1979), that "the defendant intends to use at trial," Mass. R. Crim. P. 14 (a) (3) (A), 378 Mass. 874 (1979). Assuming, without deciding, that it was error to order discovery of reports that defense counsel obtained while investigating the case and that defense counsel did not intend to use at trial (see *Commonwealth* v. *Haggerty*, 400 Mass. 437, 441 [1987]) and had not showed to any testifying expert witnesses, there was no prejudice. This sort of nonconstitutional error demands remedy only when "the error possibly weakened his case in some significant way." *Commonwealth* v. *Schulze*, 389 Mass. 735, 741 (1983). The prosecution used the defense test results in rebuttal, with prosecution experts offering the opinion that even the testing conducted by the defense demonstrated that Trapp had no mental disease or defect. On cross-examination, at least one such test was shown to the defense experts who testified. The test results themselves were not put in evidence, nor did they contain any testimonial statements by the defendant. Assuming error, it was not prejudicial.

e. *Late-disclosed rebuttal witnesses.* On the day of jury empanelment the prosecutor added two experts to the witness list. Over objection and denial of a request for a continuance, the judge allowed these two medical experts to provide their opinions regarding medical and psychological testing of the defendant done prior to this second trial. This testimony came on the sixth and seventh days after the trial began, in rebuttal to defense expert testimony regarding the testing.

The trial judge has significant discretion in deciding

whether late-discovered or late-disclosed witnesses should be excluded from testifying, or whether a continuance is appropriate. See *Commonwealth* v. *Baldwin*, 385 Mass. 165, 176 (1982) (discretion in fashioning remedy). Cf. *Commonwealth* v. *Paradise*, 405 Mass. 141, 150 (1989) (factors considered in determining violation of, and remedy for, prosecutor's duty to turn over exculpatory evidence). Here defense counsel had at least six days to prepare to cross-examine the two rebuttal witnesses. Indeed for three of those days court was not in session, for the Columbus Day holiday weekend began the day after jury empanelment. "[T]he prosecution's disclosure was sufficiently timely to allow the defendant 'to make effective use of the evidence in preparing and presenting his case.' " *Baldwin, supra* at 175. There is no evidence of bad faith in the late disclosure. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 24 (1985). The defense provided the relevant test results only one month before trial, and the record indicates that the prosecution found the rebuttal witnesses approximately at the time trial began. See *Commonwealth* v. *Costello*, 392 Mass. 393, 400 (1984) (prosecution had "an apparently blameless role in the delay"). The judge was well within his discretion in determining that the defendant was not unduly surprised, and that in any event ample time existed to allow defense preparation.[5]

Our review of the assigned errors and the entire record gives us no reason to use our extraordinary power, G. L.

---

[5] Appellate counsel argues in a motion for a new trial that there was ineffective assistance of counsel at trial. These claims contend only that trial counsel inadequately prepared expert witnesses and used a less than persuasive format to present certain scientific evidence. These claims are meritless. In the words of the motion judge, who was also the trial judge: "This was essentially a problem of the evidence and not the performance of counsel. In fact, counsel's presentation at the second trial was not only to the point but eliminated many of irrelevant matters covered during the first trial. . . . Advocacy in the second trial appears to have been at least as effective on the issue of lack of criminal responsibility as that presented during the first trial. Both times the trial strategy failed."

Trapp proffers one claim of procedural error in the judge's consideration of the new trial motion. The judge admitted affidavits of trial counsel and of one prosecution expert. The judge refused to allow appellate counsel to call those witnesses in order to cross-examine them, and then the motion judge relied on the affidavits in his decision. This is entirely proper when the motion and affidavits of the parties raise no substantial issue. Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979).

c. 278, § 33E, to overturn or reduce the verdict. There was no error mandating reversal, and the judgments of the Superior Court,[6] including the judgment of conviction for murder in the first degree, are affirmed.

*So ordered.*

---

[6]The jury also returned guilty verdicts on indictments charging armed robbery and larceny of a motor vehicle. We consolidate the errors assigned thereto with our statutorily mandated review of the murder charges. See, e.g., *Commonwealth* v. *Lawrence*, 404 Mass. 378, 379 n.1 (1989). Trapp addresses no claims of error to those convictions. We recognize that the claims of error with respect to criminal responsibility are equally applicable to those indictments. No such claim presents a substantial risk of a miscarriage of justice in this case.