COMMONWEALTH vs. RICHARD P. STEINMEYER.

No. 96-P-906.

Norfolk. January 17, 1997. - July 17, 1997.

Present: PERRETTA, DREBEN, & JACOBS, JJ.

*Practice, Criminal,* Exclusion of evidence by judge, Discovery.

The judge at a criminal trial abused her discretion in striking the testimony of
a defense witness as a sanction for defense counsel's arguably mistaken
failure to produce the witness's written statement as part of reciprocal
discovery, in circumstances in which the prosecution had been informed of
the gist of the statement, the statement was not markedly different from the
testimony and did not require investigation, and the judge did not consider
the effectiveness of less severe sanctions and the materiality of the
testimony to the outcome of the case [189-191]; where the striking was
neither justified nor harmless beyond a reasonable doubt, the defendant
was entitled to a new trial [191].

COMPLAINT received and sworn to in the Wrentham Division
of the District Court Department on June 15, 1995.

The case was tried before *Kathleen E. Coffey,* J.

*Kevin S. Nixon* for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. Convicted by a District Court jury on charges of
assault and battery and indecent assault and battery, the
defendant appeals, essentially claiming that the judge committed reversible error by striking the testimony of a witness.[1] We
agree and order the convictions vacated.

The Commonwealth's evidence consisted primarily of the
testimony of the complainant, Tracy McAvoy, who told of the

---

[1]The defendant also argues that the prosecutor misstated the evidence during his closing argument to the jury. Given our decision, we need not address
that argument. In view of the Commonwealth's acknowledgment of the misstatement, we assume it will not be repeated at any retrial.

defendant visiting her on June 14, 1995, at the self-storage facility where she was employed and, without her consent, hugging her around her waist, placing his head on her chest, and kissing her, putting his tongue in her mouth. Four witnesses gave corroborative evidence, basically in the form of "fresh complaint" testimony.

The defendant testified that he hugged and kissed McAvoy. He denied any improper or nonconsensual contact. Both McAvoy and the defendant placed the events in issue in the context of several previous contacts between them which developed as a result of the defendant's being a customer of the storage facility. These contacts included visits by the defendant to McAvoy's office during which they discussed personal matters, including their prior marriages and their families. During one of these visits, the defendant showed McAvoy an album containing photographs of his children. At one point, they agreed upon a dinner date which McAvoy claims she broke because of the defendant's increasingly persistent and disturbing attention. He testified she broke the date because she was unable to afford a baby sitter.

On the day of the alleged crimes, the defendant brought a gift of lingerie to McAvoy's place of business and asked her to try it on. She previously had informed him that she occasionally worked as a lingerie model. She claims that he made the request in earnest while he testified that it was made in jest. The defendant testified that a subsequent discussion about lunch resulted in her recommending a restaurant, and that he went there and returned with food which they ate in her office. McAvoy denied that he brought food to her office but acknowledged that he had brought a water bottle filled with wine. A bartender and a customer at the restaurant testified that the defendant had obtained food there that day.

Both the defendant and McAvoy testified to having a telephone conversation shortly after he left her office on June 14, 1995. McAvoy testified the conversation occurred after repeated unanswered calls and lasted only "a couple of minutes." She said the defendant spoke of fantasizing about her wearing the lingerie and wanting to tie her to his bed and to videotape his whipping and abusing her. She told of being very upset and frightened by him. The defendant testified that the conversation lasted from twenty to thirty minutes during the course of which he told her a joke that his roommate, Eric Van,

had made about his possession of lingerie. He also testified that McAvoy did not express fear or reluctance to see him again during that conversation.

Eric Van was called to testify following the defendant and the two restaurant witnesses. He stated that he was the defendant's roommate, that the defendant had often spoken to him about McAvoy and his conversations and visits with her during the approximately two month period preceding June 14, 1995, and that the defendant used Van's car to bring lunch to McAvoy that day. He also testified that after the defendant returned about an hour later he said, "I got a nice hug from Tracy." Van further testified that late that afternoon, he overheard parts of the defendant's telephone conversation with a person the defendant identified as Tracy McAvoy. Van testified that he told the defendant to tell McAvoy a joke he had made about the lingerie. He stated that the defendant laughingly told the joke over the phone and then related to him McAvoy's lighthearted response.

During cross-examination, Van acknowledged writing out a statement of his memory of June 14, 1995, and the events leading up to it. He testified that the statement was prepared entirely on his own and not in response to anyone's questions and that he delivered it to the defendant's attorney approximately three weeks prior to the trial. At that point, the judge permitted the jurors to leave the courtroom for their lunch recess. The prosecutor then moved to strike Van's testimony on the ground of the defendant's failure to comply with a pretrial conference agreement, see Mass.R.Crim.P. 11(b)(2), 378 Mass. 865 (1979), containing reciprocal obligations to exchange written witness "statements" pursuant to Mass.R.Crim.P. 14(a)(3), 378 Mass. 875 (1979). The prosecutor claimed surprise and detrimental effect upon his ability to prepare for cross-examination. He also claimed a "pattern of non-disclosure" based apparently upon the mistaken notion that defense counsel was obliged also to supply him with a written statement of the defendant in defense counsel's possession. The judge, after determining that Van's statement did not constitute attorney work-product and that it was distinguishable from the written statement of the defendant, informed defense counsel of the need for even-handed application of the discovery rules. She then asked whether the defendant's attorney had "another suggestion that is less Draconian or less severe" than the striking requested by the prosecutor. Defense counsel responded, "[l]ess Draconian, . . . and

without prejudicing my client in front of this jury, would be to allot the Commonwealth an amount of time, at this time, to review the statement." After the judge unequivocally rejected this suggestion, and a following request by the defendant for a mistrial, the conference ended. The judge and the prosecutor were supplied with copies of Van's statement before the trial was recessed for lunch.

The statement comprises four pages of single spaced typing and a fifth page containing five lines of typing. A little over one page of the statement is devoted to a description of Van's and the defendant's backgrounds and their living and work relationships. The balance essentially tracks Van's testimony although it is somewhat richer in detail. It contains no materials which in the circumstances reasonably would require further investigation and it easily could be read and studied during the course of a typical luncheon recess.

Upon return to the courtroom, the judge announced that she was allowing the motion to strike the testimony of Eric Van because the defendant had failed to comply with his reciprocal discovery obligations. After noting that rule 14 allowed her "discretion in terms of what would be the proper remedy," the judge stated: "After giving it considerable thought, I think the only remedy available is to strike the testimony of Mr. Van [and] I will instruct the jury to do that." Defense counsel then placed on the record his contention that there was no deception on his part and that the statement in question "was sitting quite openly at counsel's table." He further indicated that he had informed the prosecutor before the trial of "the content of Mr. Van's testimony" and that he "would testify with regard to the telephone call . . . and about the statement that was heard on the phone, and that they were joking." He also indicated that he told the prosecutor that Van's testimony would pertain to the defendant's "coming home, getting the car and going back to the place where the alleged incident occurred." He stated that his mistake was inadvertent, a claim supported by a fair reading of his other statements revealing his misunderstanding of the nature of the writing in question and his obligations with respect to it. The prosecutor then acknowledged that "defense counsel did notify me that Mr. Van would testify as to the phone conversation, and some sort of joke that was made about it," and that he may have been told of the specific time of that phone conversation. He also indicated that he was told that Van's testimony

would be "basic corroboration of what [the defendant's] version would be." Upon the return of the jurors to the courtroom, the judge informed them that Van's testimony had been struck from the record and that they were not to consider it in any way, to speculate as to her ruling, or to draw any inference with regard to it.

A defendant's constitutional right to defend himself against a criminal charge entitles him to call witnesses to testify in his behalf. *Commonwealth* v. *Chappee,* 397 Mass. 508, 516-518 (1986). *Commonwealth* v. *Durning,* 406 Mass. 485, 494-495 (1990). "However, the right to call witnesses is not absolute; in the face of 'legitimate demands of the adversarial system,' this right may be tempered according to the discretion of the trial judge." *Commonwealth* v. *Durning, supra* at 495, quoting from *United States* v. *Nobles,* 422 U.S. 225, 241 (1975). Given that a pretrial conference report filed pursuant to Mass.R.Crim.P. 11, 378 Mass. 862 (1979), "is a device designed to respond to 'legitimate demands of the adversarial system,' " *ibid.,* the complained of failure of defense counsel to provide reciprocal discovery required the judge "to balance the Commonwealth's interest in enforcing its procedural rules against the defendant's constitutional right to present evidence in his behalf." *Commonwealth* v. *Chappee, supra* at 517-518.

On review, a trial judge's discharge of that duty is invested with "significant discretion," *Commonwealth* v. *Trapp,* 423 Mass. 356, 363-364, cert. denied, 519 U.S. 1045 (1996), and her findings generally should not be displaced in the course of appellate proceedings. See *Commonwealth* v. *Baldwin,* 385 Mass. 165, 177 (1982). While we commend the judge for her interest in promoting truly reciprocal obligations on the part of criminal trial attorneys, we think that, on this record, the sanction imposed was too severe and unnecessarily invasive of the defendant's right to defend himself. Whether her description of the striking of Mr. Van's testimony as being "the only remedy available" is construed as a policy statement or as an interpretation of the applicable procedural rules, it is misguided in the circumstances. While permitting preclusion, the Supreme Court has recommended alternative sanctions as appropriate in most cases. *Michigan* v. *Lucas,* 500 U.S. 145, 152 (1991). The applicable rules of criminal procedure permit numerous alternatives to exclusion or striking of evidence. Mass.R.Crim.P. 14(c)(1), 378 Mass. 880 (1979), permits the granting of a

continuance or the entry of "such other order as [the judge] deems just under the circumstances." In addition, Mass.R. Crim.P. 48, 378 Mass. 923 (1979), recognizing the usually dominant role of attorneys rather than clients in procedural rule violations, permits the court to impose appropriate sanctions upon counsel, "including citation for contempt or the imposition of costs or a fine."

In imposing "the severest sanction," that of preclusion or striking of evidence, see *Taylor* v. *Illinois*, 484 U.S. 400, 417 (1988), the judge should make clear that she has taken into account certain requisite factors in the course of balancing the vindication of the rules against a defendant's right to present witnesses. *Commonwealth* v. *Durning*, 406 Mass. at 496. Those factors include: "(1) prevention of surprise; (2) evidence of bad faith in the violation of the conference report; (3) prejudice to the other party caused by the [violation]; (4) the effectiveness of less severe sanctions; and (5) the materiality of the testimony [in issue] to the outcome of the case." *Ibid.* The only indication in the record that the judge considered any of these factors is reflected in her informing counsel that "providing somebody with the gist or a general summary of what someone is going to testify to, is very different than providing them with a prepared written statement in terms of purposes of cross-examination, and the effectiveness of that cross-examination before a jury." Although this distinction is valid, it does not reflect an assessment of the applicable factors. Moreover, the record provides clear indication that the sanction was unduly severe and an abuse of discretion. "The question . . . is not whether discovery rules should be enforced but whether the need to correct and deter discovery violations requires a sanction that itself distorts the truthseeking process." *Taylor* v. *Illinois, supra* at 419 (Brennan, J., dissenting).

The prosecutor's claim of surprise rings hollow when viewed alongside his admission of receiving pretrial notice of the substance of Van's testimony. While defense counsel's violation may have been "wilful" in the strictest sense, it bears indicia more of mistake than bad faith. Review of both Van's testimony and his notes reveals little basis for concluding that the prosecution was prejudiced by nondisclosure of the statement or that whatever inconvenience was imposed on the Commonwealth could not be counterbalanced, as we have suggested, by review of the statement during the luncheon recess or a short delay in

the resumption of the trial. Any interest in the vindication of the rules readily could be served by the imposition upon defense counsel of the costs to the Commonwealth of any delay or by the assessment of a fine. Of major importance to our conclusion, aside from the ease with which the effect of the violation could have been cured, is the potential materiality of the struck testimony to the outcome of the case. Essentially, the jury's task was to determine whether Tracy McAvoy or the defendant had testified truthfully. The major assisting evidence was in the form of fresh complaint testimony corroborating the complainant's version and Van's testimony supporting a significant part of the defendant's testimony. The striking of Van's testimony, therefore, was critical. Moreover, the striking of testimony already heard by the jurors, as distinguished from precluding its reaching them, may have telling effect upon a jury deliberation, notwithstanding the most comprehensive judicial instruction. Here, that striking was neither justified nor harmless beyond a reasonable doubt. See *Commonwealth* v. *Degrenier*, 40 Mass. App. Ct. 212, 216 (1996).

*Judgments reversed.*

*Verdicts set aside.*