## COMMONWEALTH vs. ROBERT DRANKA.

No. 97-P-1001.

Hampden. September 16, 1998. - December 18, 1998.

Present: PORADA, GILLERMAN, & BECK, JJ.

*Witness,* Expert. *Evidence,* Expert opinion, Judicial discretion. *Practice, Criminal,* Disclosure of defense witnesses, Judicial discretion, Instructions to jury. *Rape.*

At the trial of indictments for rape and assault, the judge erred in excluding testimony of the defendant's expert witness by reason of the defendant's late disclosure to the prosecutor of the witness's existence, where the testimony was significant, defense counsel did not act in bad faith, and prejudice to the Commonwealth was not demonstrated; a new trial was required. [40-43]

At the trial of an indictment for aggravated rape, the judge correctly instructed the jury on that crime based on unnatural sexual intercourse [43-44], and the judge's misstatement in one of his instructions did not deprive the defendant of his right to have each charge alleged against him weighed separately or relieve the Commonwealth of its burden to prove each charge alleged beyond a reasonable doubt [44-45].

INDICTMENTS found and returned in the Superior Court Department on November 1, 1994.

The cases were tried before *William H. Welch,* J., and a motion for a new trial was heard by him.

*Stephen B. Hrones* for the defendant.

*Marcia B. Julian,* Assistant District Attorney, for the Commonwealth.

PORADA, J. After a jury in the Superior Court convicted the defendant of the crimes of aggravated rape, rape, and three counts of assault by means of a dangerous weapon, the defendant filed this appeal. He claims his convictions should be reversed because the trial judge erroneously precluded his expert witness from testifying and gave defective instructions to the jury on the crimes of aggravated rape and assault by means of a dangerous weapon. The defendant also claims it was error for

the motion judge, who was also the trial judge, to deny his motion for a new trial. Concluding that the trial judge abused his discretion in excluding the testimony of the defendant's expert witness, we reverse his convictions of rape, aggravated rape, and one count of assault by means of a dangerous weapon, but affirm his convictions on the other two counts of assault by means of a dangerous weapon, which remain unaffected by this error.

We summarize briefly the pertinent evidence at trial. The complainant testified that on August 28, 1994, after completing her work as an exotic dancer at a club owned by the defendant, the defendant forced her to submit to vaginal intercourse at gun-point and that, after doing so, he inserted a gun barrel into her vagina while verbally threatening her. The complainant could not remember if the defendant had ejaculated during the penile intercourse. Following these events, the complainant left the club and in her anger created a disturbance outside the club which was witnessed by two of her friends who had been waiting for her to leave. During the disturbance, the defendant threatened the two friends with a gun, resulting in their departing without the complainant. After the complainant's friends left, the defendant shoved a gun in her side in an attempt to get her back into the club. However, she managed to get away and sought help from some strangers. At about this time, the police arrived on the scene and, after taking her statement, brought her to the Holyoke Hospital for an examination and the collection of a rape kit.

The rape kit and a gun seized from the defendant at the time of arrest were submitted for analysis to the State police laboratory. The chemist from the laboratory testified that he detected sperm on the vaginal slides in the rape kit submitted to him and live epithelial cells on the gun. He testified that motile sperm can be detected only within forty-eight hours of intercourse and immotile sperm may be detected anywhere from two days up to two weeks after intercourse. A questionnaire completed by the complainant as part of the rape kit contained information that the complainant had not engaged in consensual intercourse within five days of her examination at the hospital. The chemist also testified that epithelial cells found on the gun could have originated only from a body orifice such as the vagina, mouth, or anus.

The defendant took the stand on his own behalf. He denied

that he had engaged in intercourse with the complainant, had inserted a gun in the complainant's vagina, or had threatened her friends and the complainant with bodily harm with his gun. The defendant also produced a witness who said that the complainant had told him that she was only in the case for the money. The doorman and the bartender at the club also testified for the defendant that when the complainant left the club that evening, she did not complain to them that she had been raped.

At the outset, we address the issue of the trial judge's imposition of a preclusive sanction, which is dispositive of this appeal. When the Commonwealth rested, defense counsel informed the court that his first witness would be a physician who would testify that he performed a vasectomy on the defendant in 1986; that following the operation, the defendant was tested to determine if he was capable of producing sperm; and that the test results indicated that he could not. The prosecutor objected to defense counsel calling this witness on the grounds that defense counsel did not disclose this witness to him until the morning the trial was to begin, in violation of the pretrial conference report, and that, because of the untimely disclosure, he lacked adequate time to prepare for the examination of the witness and possible rebuttal. Defense counsel argued that the results of the rape kit had not been given to him until ten days before trial[1] and not until the eve of trial had the defendant informed him that he had had a vasectomy. Defense counsel said that he had disclosed this information to the prosecutor the following morning before impanelment. The doctor's name did appear on the witness list read to the jury by the trial judge. Although the trial judge found that the testimony was material and that defense counsel had not acted in bad faith, he excluded the testimony of the witness on the grounds that the disclosure was untimely and would prejudice the Commonwealth unfairly in its preparation of the case. The trial judge subsequently expounded on his reasons for doing so in denying a motion for a new trial.[2] However, we review his decision based on the reasons he advanced at the time of his ruling during the trial.

---

[1]The prosecution informed the court that the test results were made available to defense counsel one month prior to trial and that defense counsel failed to pick them up.

[2]In his memorandum of decision denying the motion for a new trial, the judge found that in addition to the unfair surprise and prejudice to the Commonwealth, the testimony was not material to the jury's determination of the charges.

A criminal defendant has a constitutional right to call a witness in his behalf. *Commonwealth* v. *Chappee*, 397 Mass. 508, 516-518 (1986). *Commonwealth* v. *Durning*, 406 Mass. 485, 494-495 (1990). That right, however, "is not absolute" and may be considered, in the judge's discretion, "in the face of 'legitimate demands of the adversarial system.' " *Id.* at 495, quoting from *United States* v. *Nobles*, 422 U.S. 225, 241 (1975). A pretrial conference report, which is required pursuant to Mass. R.Crim.P. 11(a)(1), 378 Mass. 862 (1979), is a device designed to respond to the legitimate demands of the adversarial system. *Commonwealth* v. *Chappee*, 397 Mass. at 517-518. For a violation of this rule, a judge may, in his discretion, impose as a sanction the barring of testimony from a witness. Mass.R. Crim.P. 14(c)(2), 378 Mass. 880 (1979). However, this sanction may not be imposed without a judge's balancing "the Commonwealth's interest in enforcing its procedural rules against the defendant's constitutional right to present evidence in his behalf." *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. 185, 189 (1997), quoting from *Commonwealth* v. *Chappee*, 397 Mass. at 517-518.

The Supreme Judicial Court has laid out five factors which must be taken into account in assessing such a balance. *Commonwealth* v. *Chappee*, 397 Mass. at 518. They include (1) prevention of surprise; (2) evidence of bad faith in the violation of the conference report; (3) prejudice to the other party caused by the testimony; (4) the effectiveness of less severe sanctions; and (5) the materiality of the testimony to the outcome of the case. *Commonwealth* v. *Durning*, 406 Mass. at 496. Here, the judge considered four of the five factors — surprise, prejudice, materiality, and bad faith. He found that the surprise and prejudice to the prosecution outweighed the materiality and lack of bad faith on the part of the defense and barred the witness from testifying. Although we recognize considerable deference should be given to the trial judge's exercise of discretion in these matters, we conclude that the sanction employed was not justified in light of his findings and the circumstances of this case.

Here, the prosecution was made aware of the witness and the subject of his testimony on the first day of trial prior to impanelment. The prosecutor raised no objection at that time and did not request the court to take any action to cure any prejudice to him. Instead, he allowed the defendant to place the name of the

witness on the witness list read to the jury. Two and one-half days later after the Commonwealth rested and the defendant intended to call the doctor as his first witness, the prosecutor objected on the grounds of untimely disclosure and the prejudice to him because he lacked adequate preparation time. After listening to arguments from the prosecutor and the defense counsel, the judge found that the testimony was significant and defense counsel did not act in bad faith. Nevertheless, he found that the prejudice to the Commonwealth from this late disclosure warranted the preclusion of the testimony of the witness as a sanction. The judge did not consider any other measures to neutralize the prejudice, such as a short continuance to allow the Commonwealth to interview the witness before he took the stand or to obtain a rebuttal witness or even to allow the Commonwealth to reopen its case. While we recognize that the imposition of this sanction is warranted without the necessity of a judge having to consider other effective measures, Mass.R-.Crim.P. 14(c)(2), we note that the preclusive sanction should be reserved for "hard core transgressions." *Chappee* v. *Vose,* 843 F.2d 25, 31 (1st Cir. 1988). The Reporters' Notes to rule 14(c)(2) state that "[a] court should only employ this sanction . . . when convinced that a failure to comply with an order was deliberate and prejudicial to the Commonwealth." Reporters' Notes to Mass.R.Crim.P. 14(c)(2), Mass. Ann. Laws, Rules of Criminal Procedure 168 (Lexis 1997). Here, the judge acknowledged that he did not find that defense counsel had acted in bad faith.[3] In addition, the judge's finding of prejudice is questionable. He appears to have based his finding of prejudice on proposed testimony which he characterized as "scientific and complex." As a result, he concluded that the prosecution lacked adequate time to prepare. However, defense counsel indicated that the witness would simply testify that he had performed a vasectomy on the defendant in 1986 and that following that procedure the defendant was tested to see if he could produce sperm; the test results indicated he could not. This anticipated testimony is not the kind of sophisticated scientific testimony that would appear to warrant extensive preparation time. Cf. *Commonwealth* v. *Trapp,* 423 Mass. 356, 363-364, cert. denied, 519 U.S. 1045 (1996) (where the prosecutor disclosed to defense counsel on the day of jury impanelment that he would call two

---

[3]In denying the motion for a new trial, the judge found that defense counsel was dilatory in preparation but did not act wilfully.

medical experts who would render opinions regarding the medical and psychological testing performed on the defendant, the Supreme Judicial Court found that the trial judge did not abuse his discretion in allowing the two experts to testify where the prosecution's late disclosure was not deliberate and defense counsel had six days, only three of which were trial days, to prepare for their cross-examination). Contrast *Commonwealth* v. *Chappee*, 397 Mass. at 518. Considering the fact that the prosecution knew about this evidence for two and one-half days and that the defendant did not conclude its evidence without the excluded testimony for another two and one-half days, it would appear that the prosecution would have had ample time to prepare for an examination of this witness with or without a short continuance. In light of the judge's findings and these circumstances, we think that the judge's imposition of a preclusive sanction was not warranted.

As there was error, and a constitutional right is implicated, the convictions for rape, aggravated rape, and one count of assault by means of a dangerous weapon which hinged on the complainant's credibility cannot stand unless the error is harmless beyond a reasonable doubt. See *Commonwealth* v. *Caldwell*, 45 Mass. App. Ct. 42, 46 (1998). The case essentially presented a duel of credibility between the complainant and the defendant. Without this testimony, the jury was left without evidence to corroborate the defendant's testimony that he had a vasectomy and the test results of that procedure,[4] or an explanation of the significance of this procedure insofar as it related to the presence of sperm on the vaginal swab taken from the complainant. As a result, the jury could have inferred that the sperm found in the complainant's vagina was deposited by the defendant, thus giving credence to the complainant's version of events rather than the defendant's version. As a result, "there is a reasonable possibility that the [error] complained of might have contributed to the conviction[s]" of rape, aggravated rape, and assault by means of a dangerous weapon on the complainant which were dependent, in large part, on the complainant's credibility. *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991), quoting from *Chapman* v. *California*, 386 U.S. 18, 24 (1967). As a result, those convictions must be reversed.

Because of the result we reach, we discuss only those claims

---

[4]The judge afforded the defense counsel the opportunity to present the 1986 test results in evidence; defense counsel did not do so.

of error that might impact on the other charges, or arise anew at a retrial. There is no merit to the defendant's argument that the judge should not have given an instruction on aggravated unnatural rape because the placing of the gun into the complainant's vagina could not simultaneously form the basis of an assault with a dangerous weapon and the penetration element of the crime of unnatural rape. Contrary to the defendant's position, the underlying crime which constitutes the aggravating element does not have to occur at the precise moment of penetration. *Commonwealth* v. *Moreschi*, 38 Mass. App. Ct. 562, 571 (1995). Here, the complainant testified that the defendant had pointed his gun at her and verbally threatened her just moments before an act of natural intercourse and, immediately after completing the act, inserted the gun barrel into her vagina while declaring, "do you want to come," and "I'll blow you to kingdom come." On this evidence, the judge properly instructed the jury on the crime of aggravated rape based on unnatural sexual intercourse. See, e.g., *Commonwealth* v. *Robinson*, 24 Mass. App. Ct. 680, 687-688 (1987). Cf. *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720, 723-724 (1991).

However, we do agree with the defendant that the judge misspoke when he instructed the jury as follows:

> "However, I will instruct you that if the defendant is found guilty of aggravated rape, whether on one ground or the other, natural or unnatural, by necessity, he would have to be found guilty of assault by means of a dangerous weapon insofar as you are, well, you have to be by necessity, he have [*sic*] to be found guilty by assault by means of a dangerous weapon as I defined, he would have to be found guilty of aggravated rape."

When these instructions are placed in proper context and the judge's instructions are viewed as a whole, it is obvious that these instructions refer to the determination of the underlying felony that constitutes the aggravating element of the crime of aggravated rape by natural or unnatural intercourse and not the three counts of assault by means of a dangerous weapon. We note that this misstatement was preceded by the judge's very detailed instructions on each of the crimes and that the judge specifically drew the jury's attention to the fact that with respect to the complainant there were two incidents that formed the basis for a charge of assault by means of a dangerous weapon,

namely, what occurred in the room and what occurred out on the street in the company of her two friends. In addition, we note defense counsel did not object to the instruction. See *Commonwealth* v. *Pearce*, 427 Mass. 642, 643-644 (1998).

Although we observe that the judge should have included assault by means of a dangerous weapon as a lesser included offense on the aggravated rape verdict slips, we do not conclude that the judge's misstatement deprived the defendant of his right to have each charge alleged against him weighed separately or relieved the Commonwealth of its burden to prove each crime beyond a reasonable doubt.

In sum, we reverse the convictions of rape, aggravated rape, and one count of assault by means of a dangerous weapon in which the complainant is named as the victim. The other two counts of assault by means of a dangerous weapon (94-2360 and 94-2361) are affirmed.

*So ordered.*