## Commonwealth *vs.* Lupercio Paiva.

No. 06-P-1207.

Bristol. November 6, 2007. - March 21, 2008.

Present: Cowin, Cohen, & Graham, JJ.

*Firearms. Controlled Substances. Evidence,* Expert opinion, Relevancy and materiality. *Witness,* Expert. *Practice, Criminal,* Disclosure of defense witnesses, Witness.

At the trial of criminal complaints charging, inter alia, carrying a firearm without a license and possession of a firearm without a firearm identification card, the judge erred in excluding the testimony of the defendant's expert witness (whom the defendant had not listed as an expert witness in his pretrial conference report), where the proffered testimony (i.e., that the firearm in question might not have been operable) was relevant and material; where it was possible to mitigate any potential prejudice short of disallowing the testimony; and where there was no finding of bad faith on the part of the defendant. [412-417]

At the trial of criminal complaints charging, inter alia, possession of a class B substance (cocaine) with intent to distribute, the judge erred in excluding the testimony of a percipient witness that the defendant possessed the cocaine for personal use rather than for distribution, where the witness testified to a specific time frame, not too remote from the arrest to be probative, during which she had observed the defendant's use of cocaine, and where evidence as to the amount of cocaine that the defendant routinely consumed was relevant to rebut the Commonwealth's theory of intent to distribute, which was based entirely on the amount and packaging of the drugs seized. [417-419]

Complaints received and sworn to in the Fall River Division of the District Court Department on September 24, 2004.

The cases were tried before *Lance J. Garth,* J.

*Murray A. Kohn,* Committee for Public Counsel Services, for the defendant.

*Shoshana E. Stern,* Assistant District Attorney, for the Commonwealth.

Cowin, J. Following a stop by the Fall River police of the

motor vehicle in which he was a passenger, the defendant, Lupercio Paiva, fled from the automobile. In the ensuing chase and struggle, a gun fell from the defendant's waistband and he was arrested. After he was taken to the police station and booked, he was placed in a holding cell where an officer noticed a bulge in his sock. The bulge turned out to have been caused by a plastic baggie containing seventeen individually packaged pieces of various sizes that were subsequently determined to be cocaine.

After a jury trial in the District Court, the defendant was convicted of (1) carrying a firearm without a license, G. L. c. 269, § 10(*a*); (2) possessing a firearm without a firearm identification card, G. L. c. 269, § 10(*h*); and (3) possession of a class B substance with intent to distribute, G. L. c. 94C, § 32A(*a*).[1] He asserts on appeal that there were errors that materially prejudiced him with respect both to the firearm convictions and to the drug conviction. Specifically, he argues (1) that the judge improperly excluded the testimony of an expert defense witness who, if permitted to testify, would have opined, with respect to the instrument's capability of operating, that the alleged firearm could not have been fired in the manner claimed by the Commonwealth's expert witness; and (2) that the judge improperly excluded the testimony of a percipient witness that the defendant possessed the cocaine for personal use rather than for distribution. We conclude that each witness should have been permitted to testify, and accordingly reverse each conviction.

1. *The firearm convictions.* The offenses of carrying a firearm without a license and of possessing a firearm without a firearm identification card obviously require proof by the Commonwealth that a "firearm" was in fact carried or possessed by the defendant. "Firearm" is a term of art, and is defined in G. L. c. 140, § 121, as appearing in St. 1998, c. 180, § 8, in relevant part as "a pistol, revolver or other weapon of any description, loaded or unloaded, *from which a shot or bullet can be discharged* and of which the length of the barrel or barrels is less than 16

---

[1]The judge allowed the defendant's motion for required findings in his favor on charges of wanton destruction of property of a value less then $250 and malicious destruction of property of a value less than $250, G. L. c. 266, § 127. He was acquitted of charges of resisting arrest, G. L. c. 268, § 32B, and commission of a drug violation in a school zone, G. L. c. 94C, § 32J.

inches or 18 inches in the case of a shotgun as originally manufactured" (emphasis supplied). "The burden on the Commonwealth in proving that the weapon is a firearm in the statutory sense is not a heavy one. It requires only that the Commonwealth present *some* competent evidence from which the jury reasonably can draw inferences that the weapon will fire." *Commonwealth* v. *Nieves*, 43 Mass. App. Ct. 1, 2 (1997). Expert testimony, while admissible, is not required. See *Commonwealth* v. *Stallions*, 9 Mass. App. Ct. 23, 25-26 (1980).

Here, the Commonwealth presented evidence that the weapon taken from the defendant was one "from which a shot or bullet can be discharged" (i.e., the weapon was capable of being fired at the time in question) by means of the expert testimony of Sergeant Arthur Silvia, the armorer of the Fall River police department. Sergeant Silvia testified that the handgun is an Astra Model 400, a Spanish-made weapon manufactured between 1921 and 1928. He described the gun as "very unique . . . a collector's item. It's a very rare nine millimeter that will fire four different nine millimeter cartridges. . . . It is in good repair for its age. And it had all original parts on it that I have examined."

Sergeant Silvia testified further that he had received three of the bullets that had been recovered from the gun; the bullets were nine millimeter Luger bullets that could be fired from a number of weapons, including this one. He then test-fired the weapon with his own nine millimeter Luger ammunition, and observed that the gun fired all of the nine rounds that he had loaded. The jury, if they credited this testimony, could permissibly find that the gun was operable.

After the Commonwealth rested, the defendant sought to call as an expert witness George van Duinwyk, who counsel described as a criminal defense lawyer who had been a naval officer for eleven or twelve years, who had extensive experience with firearms, and who had been a "gun buff" for over thirty years. The prosecutor objected. In an offer of proof, the defendant's counsel stated that the witness would testify that an Astra Model 400 requires the "Bergman Fiat 9 millimeter Luger cartridge," and that he had "doubts" that the gun was capable of firing the kind of bullets that Sergeant Silvia had testified that he used in the test. In response to a question from the judge, defense counsel

admitted that he had consulted with van Duinwyk weeks earlier, but then had not listed him as an expert witness in the pretrial conference report. The judge excluded the testimony on the ground that "there was no attempt, no notice given . . . and no information given to the Commonwealth as to your intent to call this witness."

Rule 11(a) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1509 (2004), requires that the prosecutor and defense attorney attend a pretrial conference, following which a conference report shall be filed. "Agreements reduced to writing in the conference report shall be binding on the parties and shall control the subsequent course of the proceeding." Mass. R.Crim.P. 11(a)(2)(A). In addition, Mass.R.Crim.P. 14(a)(1), as appearing in 442 Mass. 1518 (2004), provides for an automatic exchange of discovery regarding intended expert opinion evidence. A trial judge is authorized to enforce agreements contained in a conference report, and is empowered to exclude the testimony of witnesses not disclosed therein. See *Commonwealth* v. *Durning,* 406 Mass. 485, 495 (1990). The exercise of the authority to exclude must, however, be balanced against a defendant's constitutional right to present evidence. See *Commonwealth* v. *Chappee,* 397 Mass. 508, 517 (1986).

Thus, the case turns on the question whether the judge abused his discretion in balancing the need for an orderly trial process in conformity with pretrial rules and agreements, including avoidance of possible prejudice to the Commonwealth from violations thereof, with the right of the defendant to defend himself against the charges, particularly where the evidence he proffers is material. "[F]actors which must be taken into account in assessing such a balance . . . include: (1) prevention of surprise; (2) evidence of bad faith in the violation of the conference report; (3) prejudice to the other party caused by the testimony; (4) the effectiveness of less severe sanctions; and (5) the materiality of the testimony to the outcome of the case." *Commonwealth* v. *Durning,* 406 Mass. at 496, citing *Commonwealth* v. *Chappee,* 397 Mass. at 517-518. The decisions in both *Durning, supra* at 494-495, and *Chappee, supra* at 517, arose from failures by a defendant to list witnesses in a pretrial conference report. The present case differs in that the conference report did not contain a commitment on

the part of the defendant to provide reciprocal discovery for the Commonwealth.[2] Nevertheless, rule 14(a)(1) required that the defendant provide advance notice regarding his expert. The rule was violated, and we see no logical reason why the principles governing conference reports would not be applicable to obligations imposed on the parties directly by the rules of criminal procedure.

The judge's comments in support of his ruling were brief. They appear to focus on two of the criteria enumerated above, specifically, prevention of surprise and the possibility of prejudice to the Commonwealth. He did not make a finding that counsel had acted in bad faith, nor did he address the materiality of the testimony or the effectiveness of less severe sanctions or of alternative ways of dealing with the problem.[3]

We have considerable difficulty with the Commonwealth's assertion that exclusion of van Duinwyk's testimony was not prejudicial error "because at most the witness would have offered equivocal testimony on a collateral matter." The issue was hardly collateral. The Commonwealth had already made a sufficient case on the firearm charges, and the defendant's only realistic chance of acquittal thereon was to create a reasonable doubt that the gun was operable. The materiality of the proffered evidence was such that the defendant's constitutional right to call witnesses to defend himself is implicated. See *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. 185, 189 (1997).

While the prosecutor could not have been surprised by the issue (the gun's ability to discharge a bullet is an element of the offense and the prosecutor took special pains to present plausible testimony on the subject), we accept that he had no way of knowing that there would be a defense witness on the subject, who the witness was, or what the witness would say. Certainly

---

[2]See, in this regard, *Commonwealth* v. *Lopes*, 25 Mass. App. Ct. 988, 988 (1988) (without basis to determine what was promised by Commonwealth, judge acted within his discretion in declining to exclude testimony).

[3]Granted, defense counsel did not articulate reasons for admitting the testimony despite the absence of notice, or suggest a less serious sanction. At the same time, the judge rebuffed his efforts to state his grounds for objecting to the ruling, and we cannot know whether some or all of the considerations in *Commonwealth* v. *Chappee*, *supra*, would have emerged had he been given an opportunity to state his position.

the potential for prejudice was present. On the other hand, it was possible to mitigate that prejudice. The defendant's offer of proof made it clear that the proposed testimony would be neither lengthy nor complex. See *Commonwealth* v. *Dranka*, 46 Mass. App. Ct. 38, 42 (1998) ("anticipated testimony is not the kind of sophisticated scientific testimony that would appear to warrant extensive preparation time"). The judge had various expedients from which he could have chosen. He could have ordered that a written summary of the proposed testimony be provided or that the prosecutor be permitted to interview the witness. A brief recess for these purposes was an option. If necessary, the Commonwealth could have been permitted to recall Sergeant Silvia or call another witness to rebut the newly introduced testimony. Costs, if appropriate, could have been imposed.

We recognize the "legitimate demands of the adversarial system." *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. at 189, quoting from *United States* v. *Nobles*, 422 U.S. 225, 241 (1975). Those demands, however, are in place to serve the system's objective of fair resolution of disputes on the merits. "[T]he preclusive sanction should be reserved for 'hard core transgressions.' " *Commonwealth* v. *Dranka*, 46 Mass. App. Ct. at 42, quoting from *Chappee* v. *Vose*, 843 F.2d 25, 31 (1st Cir. 1988). In the absence of a finding of bad faith on the part of the defendant, and given both the materiality of the evidence and the relative ease with which any prejudice to the Commonwealth could have been avoided, we conclude that this is a case in which enforcement of the procedural rules should have been a secondary consideration.

The Commonwealth spends little time here on the question whether exclusion of the testimony was error, but rather emphasizes its argument that the exclusion was harmless. It attempts to make the point largely by detailing what it considers to be the strength of its case. As we have indicated, the Commonwealth's case was sufficient; that does not mean, however, that it was immune from defeat. A finding that the weapon could be fired was dependent for the most part on the testimony of the Commonwealth's expert. We are not prepared to predict that an expert who challenged the accuracy of the Commonwealth's test could not have persuaded the jury that there was at

least a reasonable doubt that the weapon, manufactured in the 1920's and described by Sergeant Silvia as a "curio," was still capable of discharging a bullet. We prefer that questions of this nature be decided by juries, not by assumptions at the appellate level.[4]

2. *The drug conviction.* Charged with possession of a class B substance with intent to distribute, the defendant attempted to defend on the ground that the narcotics that were found on his person were in his possession for personal use rather than for sale. In this regard, he sought to introduce the testimony of Sherry LaFlash with the objective of demonstrating that he was a consumer of large quantities of narcotics, thereby inviting a finding that, despite the quantity seized, he did not possess the substances for distribution.

Defense counsel began by inexplicably attempting to qualify the witness as an expert on "crack" cocaine addiction. A voir dire was conducted, revealing that the witness was bereft of any training or experience that could conceivably constitute credentials that would entitle her to give opinion testimony on the subject.[5] The judge correctly precluded her from testifying as an expert.

Upon receiving that ruling, defense counsel objected and tried a new approach, stating, "I believe she's entitled to testify as to his [the defendant's] usage, which is not an expert issue." The judge again ruled adversely to the defendant; counsel objected, and reiterated that LaFlash was a percipient witness with respect to the defendant's drug consumption. The judge interrupted, stating, "No specific time, sir." Counsel attempted unsuccessfully to point out that the witness's observations actually took place relatively close in time to the defendant's arrest, but the judge would have none of it and the discussion ended.

---

[4]We express no opinion on possible issues such as the adequacy of van Duinwyk's qualifications to provide expert testimony on firearms like the one in this case or the sufficiency of factual foundations for his opinion testimony. The judge never reached these questions. We decide only that, in these circumstances, the testimony should not have been foreclosed merely because of the absence of notice to the prosecutor.

[5]The defendant's proffer regarding the witness's qualifications as an expert consisted principally of her claim that she had had a boyfriend for four or five years who was a crack addict. In addition, she had learned "some things" about the use of drugs in a college psychology course.

We believe that the witness should have been permitted to testify as a percipient witness to the defendant's drug consumption. The ground for exclusion specified by the judge was erroneous. The witness had in fact testified to a specific time frame during the voir dire, stating that she had observed the defendant's use of crack cocaine in July, August, and probably September, 2004. The narcotics at issue in the case were seized by the police in September, 2004. The period of the witness's observations was plainly not too remote from the arrest to be probative.

We are more concerned with the question whether the testimony should have been permitted given considerations of relevance. If not, we may properly affirm the judge on that ground even though it was not his expressed basis for his ruling. See *Commonwealth* v. *Mandeville*, 386 Mass. 393, 397 (1982). A lay witness can, of course, testify that she observed another using drugs. See *Commonwealth* v. *Costa*, 360 Mass. 177, 181 (1971). We think also that a lay person with sufficient exposure to an individual and experience with the subject can testify that that individual consumed certain quantities of drugs on a regular basis. It remains to decide whether a finding that the defendant was a consumer of such quantities at the time of his arrest would be meaningful.

In *Commonwealth* v. *Delgado*, 51 Mass. App. Ct. 661, 665-666 (2001), there was eyewitness testimony that the defendant delivered narcotics to another individual for cash. In asserting that he possessed the narcotics for personal use only, he proffered evidence that he had engaged in attempts at rehabilitation, but that the attempts at rehabilitation failed. We upheld the exclusion of the testimony by the trial judge, stating that "the defendant's personal drug habit casts little light, if any, upon whether he also sold drugs, at least on the occasion for which he was charged." *Id.* at 665. In other words, the defendant's claimed personal drug use established neither that he intended to distribute nor that he did not intend to distribute at the material time, and thus was not probative on the issue. *Id.* at 665-666.

At the same time, we stated: "This does not mean that evidence regarding the existence or the absence of personal drug use will never be admissible. There may well be occasions on which evidence of personal drug use has a meaningful bearing

upon the likelihood that a defendant is a distributor." *Id.* at 665. In our view, this is such a case. Unlike *Delgado*, the Commonwealth's theory that the defendant possessed the drugs in order to distribute them was based entirely on the amount and packaging of the drugs seized. At least with respect to the amount, evidence that the defendant routinely consumed such quantities himself could have effectively rebutted the Commonwealth's case. The defendant should have been given a chance to present his position to the jury. Because the challenged evidence could have had an impact on a principal issue in the case, it cannot be said that the error was harmless.

*Judgments reversed.*

*Verdicts set aside.*