## COMMONWEALTH *vs.* JOHN REYNOLDS.

Suffolk. January 5, 1999. - April 15, 1999.

Present: WILKINS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

*Evidence,* Cross-examination, Informer, Prior misconduct, Credibility of witness, Impeachment of credibility, Declaration against interest. *Practice, Criminal,* Agreement between prosecutor and witness, Discovery. *Witness,* Credibility, Impeachment, Cross-examination. *Judicial Immunity. Due Process of Law,* Extrajudicial statement.

Where a defendant charged with murder in the first degree was precluded from cross-examining investigators and calling a witness on the issue of deficiencies in the police investigation into the involvement of others as the perpetrators of the crime, the error required the grant of a new trial. [390-392]

At the trial of an indictment for murder in the first degree, the defendant was entitled to an evidentiary hearing to determine whether an informant witness was an agent of the Commonwealth at the time he obtained incriminating evidence; upon retrial of the case, an evidentiary hearing and findings of fact are required. [392-395]

At the retrial of a murder indictment, evidence of the defendant's admission of the commission of an entirely unrelated prior criminal act should be excluded from evidence. [395-396]

A pretrial conference report in a criminal case requiring reciprocal discovery of written or recorded statements of "any witness" was not ambiguous and required that the defendant disclose statements of a Commonwealth witness that he intended to use to impeach that witness. [396-398, 400]

Discussion of the factors to be taken into account in imposing sanctions for violation of a discovery agreement in a criminal case. [398-400]

At the trial of a murder indictment, the judge did not err in refusing to grant immunity to two defense witnesses whose proffered testimony was not clearly exculpatory and who were potential targets of other prosecutions. [400]

At the trial of a criminal case, the judge correctly excluded from evidence proffered statements against witnesses' penal interest that were not probative of any trial issue. [401-402]

INDICTMENTS found and returned in the Superior Court Department on March 8, 1993.

The cases were tried before *Thomas E. Connolly,* J.

*Max D. Stern (Patricia L. Garin* with him) for the defendant.

*Eric Neyman*, Assistant District Attorney, for the Commonwealth.

*Matthew H. Feinberg & Matthew A. Kamholtz* for National Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

ABRAMS, J. A jury found the defendant, John Reynolds, guilty of murder in the first degree on the theories of extreme atrocity or cruelty and premeditation, G. L. c. 265, § 1, and of wilfully and maliciously burning a motor vehicle, G. L. c. 266, § 5. The defendant appeals. The defendant claims the trial judge erred in restricting his cross-examination of the chief police investigator on deficiencies in the police investigation, and in denying him the right to call a police witness on that issue. We agree. We conclude a new trial is required.

We set forth the background facts, which we will supplement in our discussion. The victim, Robert Lancione, a known drug dealer, was found murdered, "hog-tied" to two cinder blocks, and lying in the mudflats of the Dorchester Bay. The investigation focused on one Jon Golden, a small-scale drug dealer and customer of the victim. Golden was arrested for arson of the vehicle used in the murder. He implicated the defendant in statements to the police and in his testimony.

The Commonwealth's case depended on the testimony of Golden and a jailhouse informant. Golden said that he, the victim, and the defendant had been at a pub in the South Boston section of Boston on the night of the murder. After consuming a large amount of alcohol, Golden, who was in possession of a van he regularly drove, agreed to drive the victim and the defendant to their homes. The victim sat in the front seat and the defendant sat behind him. Golden testified that, at some point during the ride, the victim's feet suddenly hit the windshield and dashboard, and the victim fell to the floor. Golden saw a black rubber object around the victim's neck. The defendant then announced that the victim was "gone." Golden determined that the victim was dead. He then helped the defendant dispose of the body and burn the van. According to Golden, he did not hear the conversation between the defendant and the victim in the van. Further, Golden said that he was under duress when he helped the defendant dispose of the body.

While the defendant was awaiting trial, he met the informant in jail. The informant said that the defendant admitted his guilt to him, disclosing the details of the murder and the subsequent

burning of the van. According to the informant, the defendant asked for the informant's assistance in hiring someone to kill Golden to prevent him from testifying. The witness said that the defendant murdered the victim to "impress" some "wise guys."

The defendant's theory of the case was that Golden acted in conjunction with others over a drug deal. The defendant claims that two confidential informants told the police that two "lieutenants" of the James "Whitey" Bulger crime organization had argued with the victim concerning drug money that the victim refused to pay to them. According to the defendant's theory, the informants believed that the Bulger lieutenants either killed the victim or had him killed because of that dispute. The defendant claims that he was precluded from probing the adequacy of the police investigation into the involvement of others at trial. We turn now to the defendant's claims.

1. *Cross-examination.* The defendant complains that the judge erred by excluding evidence that the police had inadequately investigated the murder. The defendant sought to elicit the evidence through his cross-examination of the primary police witness, Sergeant Detective Paul Barnicle, and by calling Sergeant Detective Francis Dewan of the organized crime unit. Shortly after the murder in 1992, Sergeant Barnicle visited Sergeant Dewan at the organized crime unit at Boston police headquarters. Sergeant Dewan provided background information on two Bulger lieutenants who were present at the pub the night the victim was murdered. Dewan testified at a pretrial hearing that he subsequently told Barnicle that two informants reported that the victim had been fighting with Bulger's organization about money, and that the victim recently had had a violent argument with Bulger's lieutenants.

The defendant sought to show that the police failed to pursue the leads provided by the tipsters. The Commonwealth moved to limit cross-examination of Barnicle on the issue of deficiencies in the police investigation, arguing that the defendant was attempting to assassinate Barnicle's character and to introduce hearsay evidence through the "back door." Defense counsel offered to redact the information, so the jury would learn only that Dewan heard from two informants that someone else committed the crimes. The Commonwealth further argued that Barnicle did pursue the organized crime leads so that there was no evidence that the investigation was inadequate. The judge

excluded the line of questioning and the testimony of Dewan.

We agree with the defendant that he should have been allowed to elicit the redacted form of the tipsters' leads on his cross-examination of Barnicle, and to call Dewan as a witness to show that the police investigation was deficient. "[T]he scope of cross-examination . . . rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown to a party by reason of too narrow restriction or too great breadth of inquiry." *Commonwealth* v. *Repoza*, 382 Mass. 119, 125 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987).

It is well settled that a defendant has a right to expose inadequacies of police investigation. See *Commonwealth* v. *Person*, 400 Mass. 136, 140 (1987); *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980); *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 308 (1979); *Commonwealth* v. *Pettie*, 363 Mass. 836, 840-841 (1973). "[A defendant] may argue to the jury that, had the police done certain aspects of their investigation differently, it would have supported his defense." *Person, supra.* "The fact that . . . certain police procedures [were] not followed could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors. The judge should not have removed this evidence from the jury's consideration, and in so doing invade[d] the province of the jury to decide what inferences to draw from certain evidence."[1] *Bowden, supra* at 486, citing *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365, 370 (1977).

The Commonwealth's assertion that the evidence properly was excluded because it constituted inadmissible totem pole hearsay misses the mark. The defendant did not offer the substance of the informants' tips for the truth of the matter asserted. Rather, the defendant offered the fact that the tips occurred and were not investigated. The adequacy of the investigation was a question for the jury, and the cross-examination sought to reveal facts pertinent to their inquiry. The defendant should not have been precluded from eliciting evidence on the question simply because the Commonwealth asserted that the

---

[1]To prevent the jury from reaching unwarranted inferences, the Commonwealth is permitted to elicit the reason for the omission on redirect examination. See *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 476 n.2 (1985).

investigation was adequate.[2] The defendant was entitled to show that the investigation was deficient. See *Person, supra.*[3]

*2. Testimony of the jailhouse informant.* Before trial, the defendant moved to suppress the testimony of the jailhouse informant, arguing that the contents of his testimony were obtained in violation of the defendant's rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[4] The defendant also moved for an evidentiary hearing. The motion to suppress and the request for an evidentiary hearing were denied.

The jailhouse informant testified that, while the defendant and he were incarcerated, the defendant disclosed details of his participation in the murder and inquired whether the witness knew of anyone who could kill Jon Golden. The witness also testified that the defendant confessed to burning the van. The defendant renewed his objection when the witness was called, and, after the witness testified, the defendant moved to strike the testimony and renewed his request for an evidentiary hear-

---

[2]The cases cited by the Commonwealth are distinguishable. In *Commonwealth* v. *Daye,* 411 Mass. 719 (1992), we upheld certain limitations placed on the defendants' right to cross-examine police in their investigation of other suspects. However, the defendants in *Daye* were permitted to elicit testimony from a police officer that he had received an anonymous tip, and, as a result, investigated numerous suspects. The defendants were prohibited from eliciting only the names of these suspects and the locations where the investigative activity occurred. *Id.* at 735. The defendant in the case before us proposed to do no more than was properly permitted in *Daye.*

[3]Before trial, the defendant moved for disclosure of the identities of the two informants. The motion judge denied the defendant's request, finding that the informants were mere "tipsters." The defendant then moved for an in camera hearing by the trial judge to determine the scope of the exculpatory information known by the informants. The defendant now argues that the questions posed by the judge to the tipsters at the in camera hearing were inadequate. There was no error. The defendant knew the identity of the persons whom he believed the tipsters would implicate in the murder, as well as the alleged motive of those persons. He was free to communicate independently with those persons or their associates to obtain exculpatory evidence. Additionally, the tipsters' answers did nothing to dispel the notion that they were mere tipsters.

The critical issue is not the in camera hearing, but the restriction placed on cross-examination. The defendant was not entitled to a full deposition of the tipsters by the trial judge. However, he was entitled to show that the police did not adequately investigate the leads provided by the tipsters.

[4]Prior to trial, the defendant argued that, at the time the witness had conversations with the defendant, he was acting as an agent of the Norfolk County district attorney's office. The witness had another case pending in Norfolk County and was also acting as an informant on another matter.

ing to determine whether the witness was an agent of the Commonwealth at the time he obtained incriminating evidence. The defendant argued that, because it was unclear when the conversations between the witness and the defendant took place, the evidence should have been excluded or at least a hearing held to determine when the information was obtained. We agree.[5]

Under the Sixth Amendment, the Commonwealth may not "deliberately elicit" statements from the defendant in the absence of his counsel, once formal adversary proceedings have commenced. See *Massiah* v. *United States*, 377 U.S. 201, 206 (1964). Any evidence deliberately elicited in violation of that rule must be suppressed. See *Maine* v. *Moulton*, 474 U.S. 159, 172-176 (1985). This prohibition applies equally to overt interrogation by police officers and informants acting as government agents. See *Commonwealth* v. *Harmon*, 410 Mass. 425, 428 (1991). A judge must determine whether a witness was an agent of the government and, if so, whether evidence was "deliberately elicited" after the agency relationship was formed.

An informant "who has not entered into any agreement with the government, and who reports incriminating evidence to police out of conscience or even 'an unencouraged hope to curry favor' is not acting as a government agent." *Id.*, quoting *Thomas* v. *Cox*, 708 F.2d 132, 136 (4th Cir.), cert. denied, 464 U.S. 918 (1983). If nothing is "offered to or asked of" the informant, his actions will not be attributed to the Commonwealth. *Commonwealth* v. *Rancourt*, 399 Mass. 269, 274 (1987). However, "[w]here the government has entered into an arrangement with a prison inmate agreeing to pay him for incriminating evidence elicited from another inmate, an agency relationship may have been established." *Harmon, supra* at 428.

The defendant argued that the witness was an agent of the Commonwealth when these conversations took place. The defendant relied on the promise of the Commonwealth to bring

---

[5]The defendant also makes an evidentiary challenge to the informant's testimony. He contends that the witness should not have been permitted to testify about "friends" and "associates" he had in common with the defendant, nor should he have been permitted to recite the names of these individuals. The defendant complains that the testimony posed a danger of guilt by association. We disagree. Defense counsel's opening statement implied that there was no reason for the defendant to approach the informant. The challenged testimony establishes a reason. Thus, there was. no error in admitting the testimony.

the witness's cooperation to the attention of prosecutors and the court, if and when requested.[6] Relying in part on *Harmon* and *Rancourt*, the Commonwealth argued both that the witness was not an agent of the Commonwealth and, alternatively, that the witness had obtained all the information prior to any agreement between the witness's attorney and the Commonwealth. The judge denied the defendant's motion "for the reasons stated by counsel for the Commonwealth." The judge made no findings of fact. It is unclear whether he relied on the lack of an agency relationship or a determination that all the relevant information was obtained before a relationship formed. The record is inadequate to support either conclusion.

The recognition of cooperation, promised by the Commonwealth to be given in another pending criminal matter, was sufficient to make the witness the Commonwealth's agent.[7] See *Harmon, supra* at 429 ("we make an independent determination as to whether [the witness] was functioning as a government agent by applying constitutional principles to facts").

The Commonwealth's promise was more than "an unencouraged hope to curry favor." *Harmon, supra* at 428, quoting *Thomas, supra*. Rather, there was an articulated agreement containing a specific benefit. Therefore, it was necessary to determine when that relationship was formed and whether the witness agreed to testify to information obtained after he became a Commonwealth agent. As counsel argued in seeking an evidentiary hearing, there was ambiguity as to both issues.[8] On remand, an evidentiary hearing and findings of fact are required

---

[6]The witness was in the process of negotiating a plea in a pending matter in Norfolk County at the time the agreement was reached. See note 4, *supra*.

[7]The witness stated that he never received the benefit of the promise. However, the promise of the recognition of cooperation is sufficient to form an agency relationship.

[8]For example, the witness testified that he had obtained all the information before calling his attorney. That call was placed on February 8. However, the witness also testified that he had continuous discussions with the defendant about the defendant's crime and the plan to kill Golden on February 8, 9, and 10. The witness also testified that he continued to have conversations with the defendant about these matters until the two were separated.

The record is unclear as to when the witness's attorney secured an agreement with the district attorney's office to exchange the information for the promise of recognition of cooperation. The attorney testified that he first spoke to someone in the prosecutor's office on February 8, and he stated that he may have asked for the acknowledgment of cooperation on that date. He also testified that an agreement between his cocounsel and the assistant

to determine whether the witness obtained the information to which he testified prior to the establishment of any agency relationship.[9]

3. *Character evidence.* The defendant argues that the judge improperly admitted prejudicial character evidence.[10] Over defense counsel's objection, the judge allowed Sergeant Barnicle to testify that the defendant told him that "You know, in Spain, the drug dealers are easy to rob." On retrial, this statement should not be admitted. "Evidence of prior bad acts is not admissible to show that the defendant has a criminal propensity or is of bad character." *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991), quoting *Commonwealth* v. *Robertson*, 408 Mass. 747, 750 (1990). The Commonwealth may introduce such evidence if it is relevant to the crime charged and if its probative value outweighs its prejudicial impact. *Otsuki, supra.* The Commonwealth, implying that the victim was killed in the course of a robbery, argues that the statement is an admission and that it demonstrates motive and knowledge of the circumstances surrounding the murder. We disagree.

The defendant admitted only that he committed another, entirely unrelated crime. He did not reveal any knowledge of the circumstances of this crime. The prejudicial effect of this statement far outweighed its minimal probative value. There is a danger that the jury dispensed with proof beyond a reasonable doubt because the defendant appeared to be a bad man likely to

district attorney in charge of the murder was reached on February 9 and reduced to writing on February 10.

[9]Citing *Commonwealth* v. *Rodwell*, 394 Mass. 694, 697-698 (1985), the Commonwealth argues that it was not error to deny an evidentiary hearing. In *Rodwell*, the affidavit accompanying the motion for an evidentiary hearing "presented no significant facts in support of the claim that [the witness] was a government agent." *Id.* at 698. In contrast, here there was evidence that the witness's attorney had spoken to the prosecutor and secured an agreement. However, the exact date of the agreement is unclear, and it is possible that the witness continued to learn information to which he would later testify after the agreement with the Commonwealth was formed. In such circumstances, an evidentiary hearing is necessary.

[10]The defendant also complains about several comments the judge made to witnesses. A judge should refrain from making comments which might tend to influence the jurors' opinions about a witness.

The defendant further argues that the judge improperly allowed a police officer to answer a telephone call from the judge's chambers. We conclude that allowing a party or a witness to use a telephone to avoid delay in court proceedings is not erroneous.

commit the crime charged. *Commonwealth* v. *Phillips*, 413 Mass. 50, 57 (1992). The statement therefore should have been excluded. It should not be admitted at retrial.[11]

4. *Discovery violation.* Although unlikely to arise at a new trial, we nevertheless discuss the discovery issue. The jailhouse informant testified that his sole motivation for reporting his conversations with the defendant to the authorities was to save the life of Golden, whom the defendant allegedly wanted killed. The defendant sought to impeach this testimony with letters and transcripts containing statements made by the witness in connection with another case. The evidence would have impeached the credibility of the witness by documenting his attempt to trade favorable testimony to both sides of a civil case in exchange for an exculpatory statement or lenient treatment on the case's criminal counterpart.[12]

During cross-examination of the informant, the defendant produced the letters and transcripts for the first time. The

[11]The defendant further complains about a statement he made to the Florida police officer who apprehended him. Over defense counsel's objection, the officer testified that the defendant told him that he was on the run because he had been "in a fight with someone and bit the person's ear off." The judge denied the defendant's request that the testimony refer only to a fight, an assault, or to biting someone's ear. The defendant argues that the entire statement invited the jury to view him as a dangerous individual capable of committing the murder. The judge did not abuse his discretion in admitting the entire statement. The statement was probative of the defendant's consciousness of guilt and admissible on that ground.

[12]The informant had been convicted of kidnapping. The father of the victim was shot and killed in a hail of bullets when the police and the Federal Bureau of Investigation (FBI) retook the premises held by the informant and his codefendant. The government claimed that the father had been shot accidentally after picking up the gun of the codefendant. At the informant's trial, where the informant represented himself, he asserted in his opening statement that the father never had a gun in his hand.

After the informant was convicted and sentenced, the family sued the FBI and the police. The informant wrote a letter to the FBI in which he offered to tell the truth and claimed that everything he had said at his trial was a lie. The informant later gave a signed statement to the FBI saying that the father had had a gun and had tried to shoot the officers. The informant asked that the district attorney's office be informed of his cooperation.

Eighteen months later, but still before the civil trial, the informant wrote a letter to the decedent's son. He offered to testify that the police and FBI had murdered the father. In return, the informant requested that the son draft for him an affidavit acknowledging that the informant had acted under duress and that the codefendant had been holding him at gunpoint. Later the informant claimed he wrote this letter at the request of the family's lawyer.

prosecutor complained that the Commonwealth was prejudiced by the failure of defense counsel to turn over the statements prior to trial, in accordance with the pretrial conference report.[13] The judge excluded the evidence, relying on his reading of the pretrial conference report and Mass. R. Crim. P. 14, 378 Mass. 874 (1979).[14] Following this ruling, defense counsel moved for a mistrial, which was denied.

The defendant argues that he had no obligation to turn over impeachment evidence to be used against a Commonwealth witness. Rather, his discovery obligations were limited to statements of witnesses he intended to call at trial. He bases this argument on rule 14 (a) (3), on which the discovery report was based. Alternatively, the defendant argues that the pretrial conference report is ambiguous and thus must be construed against the maker of the form, in this case, the Commonwealth, citing *Koshland* v. *Columbia Ins. Co.*, 237 Mass. 467, 472 (1921).

We conclude that the pretrial report, on its face, required the disclosure of the impeachment evidence. The report stated that the defendant was obligated to turn over "[a]ny written or recorded statements of any witness in the possession of Defense Counsel . . . ." *Any witness means any witness*, whether for the defense or the prosecution. There is no support for the defendant's contention that this requirement is limited to statements of witnesses the defendant intends to call at trial. Allowing the defendant to withhold such evidence against a witness who is certain to be called to testify would undermine the

---

[13]The pretrial conference report, in part, required reciprocal discovery of:

"(e) Any written or recorded statements of any witness in the possession of the Defense Counsel including tapes or transcripts of the District Court proceedings."

[14]The judge ruled in part: "Given the fact that these documents were in the possession of defendant's counsel for a long period of time and — with that particular report — but also because if there are probative values, it's extremely limited to the point of impeachment. And it's [marginally] relevant, if at all relevant. And the complete failure of defendant's counsel to timely produce those documents and to share them with counsel is extremely prejudicial to the Commonwealth. So, based on Rule 14 and based on the pretrial conference report pursuant to Rule 11 that was filed here on April 1 of 1993, the Court allows the Commonwealth's motion in limine to exclude and to strike the statements."

discovery rules and allow attorneys to return to trial by ambush. Theatrics do not accord with our discovery process. See *Commonwealth* v. *Paszko*, 391 Mass. 164, 188 (1984) ("The policy of our rules is that the availability of statements of nonparty witnesses gathered by an adversary serves a truth-enhancing function . . . that outweighs any resulting inconvenience or potential disincentive to lawyers who obtain and preserve such statements in written form" [citations omitted]).

Once it was determined that the defendant violated the discovery order, it was incumbent on the judge to fashion an appropriate remedy. We have not reviewed the exclusion of statements sought to be used for impeachment as a remedy for a discovery violation. However, the factors taken into account in reviewing the exclusion of an undisclosed witness are applicable to this situation as well. Those factors are (1) prevention of surprise; (2) evidence of bad faith in the violation of the conference report; (3) prejudice to the other party caused by the testimony; (4) the effectiveness of less severe sanctions; and (5) the materiality of the statements to the outcome of the case. *Commonwealth* v. *Durning*, 406 Mass. 485, 496 (1990). *Commonwealth* v. *Chappee*, 397 Mass. 508, 518 (1986). In imposing the severest sanction of preclusion of the evidence, the judge must make clear that all these factors have been considered in balancing enforcement of the rules against the defendant's right to present a defense. *Commonwealth* v. *Dranka*, 46 Mass. App. Ct. 38, 41 (1998) (reversing certain convictions because judge considered only four of five factors). *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. 185, 190 (1997) (reversing convictions because record failed to show adequate consideration of factors).

It can be inferred that the judge found the Commonwealth's plea of surprise to be genuine. *Commonwealth* v. *Porcher*, 26 Mass. App. Ct. 517, 519 (1988). The judge also found that defense counsel acted in bad faith in failing to turn over the statements to the Commonwealth because he found that defense counsel's omission was deliberate. Defense counsel admitted that the omission was calculated to gain tactical advantage. In the context of discovery violations, bad faith exists when a violation was "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence."

*Taylor* v. *Illinois*, 484 U.S. 400, 415 (1988).[15] See *Spiegel* v. *Beacon Participations, Inc.*, 297 Mass. 398, 416 (1937) ("[Bad faith] means a breach of a known duty through some motive of interest or ill will"). The judge also explicitly found that the Commonwealth was prejudiced. Further, the statements were clearly material. Impeachment evidence that placed the informant's credibility in considerable doubt would have been critical to the defendant's case.[16] See *Steinmeyer, supra* at 191 (struck testimony was deemed material where case turned on credibility of witnesses).

The question that remains is whether less severe sanctions were appropriate. "[T]he preclusive sanction should be reserved for 'hard core transgressions.' " *Dranka, supra* at 42, quoting *Chappee* v. *Vose*, 843 F.2d 25, 31 (1st Cir. 1988). See *Commonwealth* v. *Edgerly*, 372 Mass. 337, 343 (1977) ("We expect that the extreme sanction [of preclusion] would be imposed only where the Commonwealth is prejudiced significantly by surprise and there is no reasonable, alternative means of achieving the purpose of the rule"). The Reporters' Notes to Rule 14 (c) (2), Mass. Ann. Laws, Rules of Criminal Procedure 168 (Lexis 1997), state: "A court should only employ this sanction . . . when convinced that a failure to comply with an order was deliberate and prejudicial to the Commonwealth."

Alternative sanctions are adequate and appropriate in most

---

[15]At least fourteen States have adopted the definition of bad faith set forth in *Taylor* v. *Illinois*, 484 U.S. 400 (1988). See *State* v. *Delgado*, 174 Ariz. 252, 257, 259 (Ct. App. 1993); *McGinty* v. *Superior Court*, 26 Cal. App. 4th 204, 213 (1994); *People* v. *Richards*, 795 P.2d 1343, 1346 (Colo. Ct. App. 1989); *State* v. *Genotti*, 220 Conn. 796, 811 (1992); *People* v. *Pondexter*, 214 Ill. App. 3d 79, 85-86 (1991); *Beckwith* v. *State*, 707 So. 2d 547, 575 (Miss. 1997), cert. denied, 119 S. Ct. 187 (1998); *State* v. *DeLong*, 136 N.H. 707, 710 (1993); *McCarty* v. *State*, 107 N.M. 651, 653, 655 (1988); *White* v. *State*, 973 P.2d 306 (Okla. Crim. App. 1998); *Commonwealth* v. *Zimmerman*, 391 Pa. Super. 569, 580-581 (1990), cert. denied, 503 U.S. 945 (1992); *State* v. *Bowling*, 585 A.2d 1181, 1185 (R.I.), cert. denied, 501 U.S. 1210 (1991); *State* v. *Passino*, 161 Vt. 515, 522-523 (1994); *State* v. *Hutchinson*, 135 Wash. 2d 863, 883-884, cert. denied, 119 S. Ct. 1065 (1999); *State* v. *Ward*, 188 W. Va. 380, 387 (1991).

[16]The Commonwealth asserts that the precluded evidence added nothing to the defendant's case because defense counsel had already demonstrated potential witness bias with other evidence. The Commonwealth makes no claim, however, that the evidence was cumulative. Contrast *Commonwealth* v. *Durning*, 406 Mass. 485, 497-498 (1990). The presentation of some injurious evidence does not preclude the defendant from offering different damning evidence.

cases. See *Michigan* v. *Lucas*, 500 U.S. 145, 152 (1991). "In some instances, granting a continuance may be such a reasonable alternative." *Edgerly, supra.*[17] Where the stakes are high, as they are in murder cases, preclusion is the last resort. Before prohibiting the use of undisclosed material during the cross-examination of a witness or prohibiting a witness from testifying, the judge must make explicit his findings regarding the five factors outlined in *Durning*, especially his consideration of alternative sanctions.

At retrial, impeachment will be conducted according to the rules of evidence. Defense counsel may impeach the witness with the letters and transcripts, and the Commonwealth may rehabilitate the witness.

5. *Issues likely to arise at retrial.* In addition to the issues already discussed, we comment briefly on other claims likely to arise at retrial.

a. *Immunity.* The defendant asserted a defense of third-party culpability. His alternative theory of the case was that the victim's drug supplier, Elkin Escobar, murdered the victim because the victim had been stealing from him. He sought to call Escobar and Escobar's female companion in support of his claim that Bulger's lieutenants were responsible for the murder. Both witnesses asserted their rights against self-incrimination under the Fifth Amendment to the United States Constitution. The defendant requested that the court grant immunity to the witnesses. The Commonwealth disagreed with the proposal, and the judge denied the request.[18]

The defendant argues that the judge erred in refusing to grant judicial immunity. We disagree. This case does not present the type of "unique" circumstances which require judicial immunity. *Government of the V.I.* v. *Smith*, 615 F.2d 964, 969 (3d Cir. 1980). The proffered testimony was not clearly exculpatory, and the witnesses were potential targets of other prosecutions. See *Commonwealth* v. *Doherty*, 394 Mass. 341, 345 (1985), quoting *Smith, supra* at 972-973 ("[i]mmunity will be denied if the proffered testimony is found to be ambiguous, not clearly exculpatory, cumulative or . . . relate[s] only to the credibility of the government's witness"). There was no error.

---

[17]The judge could have postponed cross-examination or redirect examination to give the Commonwealth time to obtain rebuttal evidence.

[18]Failing to obtain the witness's testimony, defense counsel moved, during cross-examination of Sergeant Barnicle, to introduce the statements as statements against penal interest. The judge excluded the statements.

b. *Statements against penal interest.* The defendant complains that the judge improperly excluded three statements Escobar made to Sergeant Barnicle that (1) Escobar was dealing drugs with the victim; (2) he witnessed the argument between the victim and the Bulger lieutenants; and (3) the Bulger lieutenants were at the pub the night the victim disappeared. A statement is admissible as against penal interest if it meets three tests. "[1] [T]he declarant's testimony must be unavailable; [2] the statement must so far tend to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true'; and [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness." *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986), quoting *United States* v. *Thomas*, 571 F.2d 285, 288 (5th Cir. 1978). See Proposed Mass. R. Evid. 804 (b) (3).

The Commonwealth concedes that Escobar's testimony was unavailable, *Commonwealth* v. *Galloway*, 404 Mass. 204, 208 (1989); *Drew, supra* at 66, but only the first of the proffered statements tended to subject Escobar to criminal liability. That statement was also corroborated because Golden testified to the relationship between Escobar and the defendant.

Assuming the statement was against penal interest, it was excludable because it was not probative of any trial issue. *Commonwealth* v. *Mandeville*, 386 Mass. 393, 397 (1982) (if evidence is excludable on one ground, it is not reversible error for judge to rely on incorrect ground). Defense counsel failed to offer Escobar's statement in connection with other admissible evidence clearly implicating Escobar in the murder. *Id.* at 399. *Commonwealth* v. *Trefethen*, 157 Mass. 180, 191 (1892). *Commonwealth* v. *Abbott*, 130 Mass. 472, 475-476 (1881). The bare statement that Escobar and the victim dealt drugs together lacks probative quality and would merely mislead the jury. *Mandeville, supra.* See *Commonwealth* v. *Keizer*, 377 Mass. 264, 267 (1979), quoting *Holt* v. *United States*, 342 F.2d 163, 166 (5th Cir. 1965) (exculpatory evidence should be "of substantial probative value" and not "prejudice or confuse").[19]

The statements Escobar's female companion made to Sergeant

_____

[19]The defendant also contends that another statement of Escobar should have been admitted to establish Escobar's consciousness of guilt. Escobar told the police that he had last seen the victim the Wednesday or Thursday prior to the murder. Golden testified that Escobar had been at the pub on Friday, the

Barnicle were also properly excluded. None of the proffered statements was against penal interest because none would have tended to subject the declarant to criminal liability.[20] *Drew, supra* at 73. Even if the female companion's actions put her at risk of criminal liability, the evidence is not probative, for the reasons we stated above.

c. *Due process.* The defendant asserts that the exclusion of the statements of Escobar and Escobar's female companion, coupled with the denial of witness immunity, deprived him of due process of law. The defendant relies on *Chambers* v. *Mississippi*, 410 U.S. 284 (1973), urging that the rules of evidence were applied too mechanistically, denying him the benefit of exculpatory evidence and defeating the ends of justice. *Id.* at 302. We disagree. We do not read *Chambers* to trammel on judicial discretion to exclude evidence that lacks probative value and does not exculpate the accused. See *Commonwealth* v. *Carr*, 373 Mass. 617, 625 (1977).

6. *Conclusion.* The defendant's convictions of murder in the first degree and of burning of a motor vehicle are reversed, the verdicts are set aside, and the case remanded to the Superior Court for a new trial.

*So ordered.*

---

night the victim was murdered. False statements are admissible to show consciousness of guilt. *Commonwealth* v. *Lavalley*, 410 Mass. 641, 649 (1991). Even if Escobar lied, the lack of admissible evidence to bolster the defendant's third-party motive theory renders the statement excludable.

[20] In addition, the statements constitute hearsay within hearsay and thus an exception for each level would be required for admissibility. See Proposed Mass. R. Evid. 805.