## COMMONWEALTH *vs*. JOSHUA ARROYO.

No. 99-P-175.

Suffolk. May 4, 2000. - July 12, 2000.

Present: BROWN, PERRETTA, & GREENBERG, JJ.

*Evidence,* Hearsay, Declaration against interest, Cumulative evidence, Motive, Opinion. *Error, Harmless. Practice, Criminal,* Argument by prosecutor.

At a criminal trial, any error in the judge's restricting the defendant's cross-examination of a Commonwealth witness about his pending criminal charges was harmless, where defense counsel had ample opportunity to cross-examine the witness and to argue that the witness had motive to lie to the police and to testify falsely. [674]

At a criminal trial, hearsay statements of two persons who did not testify were erroneously admitted in evidence; however, the error was harmless where the statements were cumulative of other properly admitted testimony. [674]

The judge at a criminal trial did not err in excluding evidence of nontestifying witnesses' prior convictions; in any event, the defendant was not precluded from making the jury aware of those convictions. [674-675]

Police officers at a criminal trial properly were allowed to testify that the actions they observed were consistent with a drug transaction. [675]

In the circumstances of a criminal case, the prosecutor's improper comment in closing argument on the defendant's failure to testify was not reversible error. [675-676]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on January 9, 1997.

The case was tried before *Gregory L. Phillips*, J.

*Michael R. Schneider* for the defendant.

*Dean A. Mazzone*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On appeal from his convictions on a two-count complaint charging him with distribution of heroin and its distribution in a school zone, the defendant claims error in various evidentiary rulings of the trial judge and improper closing argument by the prosecutor. Although the defendant's trial was

not free of error, a majority of the panel concludes that reversal of his convictions is not required and affirm the judgments.[1]

1. *The evidence.* On the afternoon of January 7, 1997, plain-clothed police officers, William Duggan and Steven Whitman, were in an unmarked police car while conducting surveillance in the Roxbury section of Boston. They observed a blue Toyota Tercel, with three occupants, double-parked on Dudley Street. As later learned, William Moore was the driver of that car, Paul Carita was a front-seat passenger, and Paul Merlino was seated directly behind Moore. The officers observed the defendant walk up to the car, lean into the passenger side window, and engage in brief conversation with the occupants of the car. After the defendant stepped away from the car, it drove off, circled the block, and returned to its original position. The defendant got into the car and sat in the back seat beside Merlino. The car pulled into traffic, and Duggan and Whitman followed. After driving four blocks, the car stopped. The defendant got out of the car and jogged back up the street. As he did so, he was holding money in his hands and was counting it. The officers stopped the car and questioned the occupants. At that time, they saw "an empty glassine bag of heroin" on the floorboards of the front passenger side of the car. Moore also gave Duggan two glassine bags of heroin which were stamped "credit." Duggan spoke with Moore, Carita, and Merlino separately. Each told him that they had gone to the Dudley Street area to purchase heroin. Moore told Duggan that he had bought the heroin from the defendant. The defendant was arrested the next day, January 8, 1997.

Charges against Carita and Merlino were not pursued because no drugs were found on them. Moore was not arrested at the scene, but was later charged with possession of heroin, a charge which was continued without a finding for six months. Although Moore testified at trial, Carita and Merlino did not. However, Duggan was allowed to testify that they, Carita and Merlino, had admitted to him that they had gone to the Dudley Street area of Roxbury to purchase heroin.

It was the defendant's theory of defense, presented through his opening statement, his cross-examination of the Commonwealth's witnesses, and his closing argument, that Merlino

---

[1]Justice Brown would hold that the errors which occurred at trial had a cumulative effect which deprived the defendant of a fair trial. See *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 541 n.10 (1991).

was operating a drug delivery service in the area and that Merlino had sold heroin to the defendant on January 7.

2. *Discussion.* Some of the claims of error require a bit more discussion than others. In any event, we take them up in the order set out in the defendant's brief.

a. *Evidence of Moore's bias and motive to lie.* Assuming without deciding that the trial judge was in error in restricting the cross-examination of Moore about his pending criminal charges and their potential for influencing both the statements he made to the police on January 7, 1997, as well as his testimony at the defendant's trial, any such error was harmless. In his opening statement, cross-examination of Moore, and closing argument, the defendant forcefully made known to the jury the fact that Moore had ample motive to lie to the police on January 7 and to testify falsely. See *Commonwealth* v. *Quegan*, 35 Mass. App. Ct. 129, 134 (1993), quoting from *Commonwealth* v. *Barnes*, 399 Mass. 385, 393 (1987).

b. *Hearsay statements of Merlino and Carita.* Duggan was allowed to relate to the jury the hearsay statements of Merlino and Carita, that they were the buyers of the heroin and that the defendant was the seller. The trial judge concluded that the statements of Merlino and Carita were admissible as declarations against penal interest. On appeal, the Commonwealth correctly concedes that the hearsay testimony was inadmissible. See *Commonwealth* v. *Reynolds*, 429 Mass. 388, 401 (1999). The question before us is whether their admission in evidence requires reversal of the defendant's convictions. We conclude that the error was harmless. In the first instance it was cumulative of Moore's testimony. See *Commonwealth* v. *Wilson*, 427 Mass. 336, 348 (1998); *Commonwealth* v. *Vinnie*, 428 Mass. 161, 172-173, cert. denied, 525 U.S. 1007 (1998). Additionally, it was made abundantly clear to the jury that Merlino and Carita had the same motive to lie as did Moore.

In a related claim, the defendant argues that the trial judge erred in denying him the right to impeach the hearsay statements with evidence of the declarants' prior convictions. The argument fails for the reason that the transcript shows that, although the trial judge would not allow the defendant to put certified copies of Merlino's convictions in evidence (because he was not a witness), the trial judge did not preclude the defendant from making those convictions known to the jury. Moreover, based upon the defendant's opening statement, cross-

examination of the witnesses, and his closing argument, the jury were well aware that the witnesses had ample motive to make false statements.

c. *Opinion testimony.* Based upon their training and experience, Duggan and Whitman were allowed to testify that the actions which they observed were consistent with a drug transaction. Such testimony is admissible, see *Commonwealth* v. *Woods*, 419 Mass. 366, 375-376 & n.13 (1995), and there is nothing in *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579-580 & n.8 (1998), decided subsequent to trial in the present case, which holds otherwise. See *Commonwealth* v. *Griffith*, 45 Mass. App. Ct. 784, 786 n.3 (1998).

d. *Closing argument.* At the conclusion of the prosecutor's closing argument, defense counsel approached the bench and requested a mistrial based upon a litany of alleged improper statements made by the prosecutor. The only issue on appeal which merits some discussion is the one not objected to at trial, and that is the prosecutor's comment upon the fact that the defendant did not testify:

> "Did anybody see the hand to hand sale? No. They didn't or at least nobody that was in this courtroom and you know, when you ask for the, well gee is there someone I would have liked to have heard from it was this man right here who said it was Paul Merlino who made the sale."

As stated in *Commonwealth* v. *Gouveia*, 371 Mass. 566, 571 (1976): "Whatever the prosecutor's intent, we think his remarks were 'reasonably susceptible of being interpreted as a comment on [the defendant's] failure to take the stand which, of course, was improper.' *Commonwealth* v. *Domanski*, 332 Mass. 66, 69 (1954)."

The trial judge did not act in accordance with the better practice of intervening on his own motion to interrupt and immediately instruct the jury on the defendant's right not to testify. See *Commonwealth* v. *Gouveia*, 371 Mass. at 571. We find this failure more than understandable in view of the facts, as amply supported by the transcript, that the defense was aggressive and contentious and that defense counsel expressly requested that the trial judge *refrain* from instructing the jury on the defendant's right not to testify. Moreover, when defense counsel

approached the bench at the conclusion of the prosecutor's argument and voiced her many objections to his summation, she made no mention whatsoever of the comment concerning the defendant's failure to testify and requested no curative instruction nor explanation for her reasons in not making the request. See *Commonwealth* v. *Hawley*, 380 Mass. 70, 85-86 (1980). Put another way, while she voiced numerous objections in great detail about the prosecutor's various remarks, she was silent about the serious statement now in issue. Additionally, no objection was taken to the trial judge's instructions.

In light of the Commonwealth's evidence and in view of the facts that the jury were well aware of the defendant's theory of the case; that the defendant wanted no instruction from the trial judge concerning his right not to testify; that defense counsel made numerous objections to the prosecutor's closing argument, while remaining silent about the "error" now claimed on appeal; that the prosecutor repeatedly stated in his closing argument that the Commonwealth and not the defendant had the burden of proof; and that the trial judge gave strong instruction on the Commonwealth's burden of proof, the defendant's presumption of innocence, and his right not to present evidence, we conclude that there is no basis for disturbing the defendant's conviction on the basis of the prosecutor's argument.

3. *Conclusion.* We conclude that the defendant received a fair trial, notwithstanding the errors which did occur, and that there is, therefore, no basis for disturbing his convictions.

*Judgments affirmed.*