Krupp, Peter B., J.
This matter is before the court on a motion filed by defendant Jose Lora (“Lora”) to exclude the identification testimony of David Roldan (“Roldan”). To understand this motion, an understanding of the procedural history of the case is required.
FACTUAL BACKGROUND
Lora is charged in multiple indictments arising out of an alleged incident on May 12, 2012 during which a firearm was allegedly fired on Jefferson Street in *247 Worcester, Massachusetts.[1] The indictments were returned on September 19, 2012. Lora was arraigned on September 21, 2012.
On the date of the arraignment, the District Attorney filed a document entitled “Commonwealth’s Certificate of Discovery Compliance,” which reflected production of grand jury exhibits 1-10, the Worcester Police Department Report on the incident (12 pages), and the audio recording of Lora’s 58A hearing. On October 29, 2012, the District Attorney filed a second document entitled “Commonwealth’s Certificate of Discovery Compliance,” which reflected production of grand jury minutes (39 pages). The grand jury minutes, which were from September 4, 2012, contained testimony from two civilian witnesses, Roldan and David Zayas, and from Worcester Police Officer James Carmody (“Off. Carmody”).[2]
In his grand jury testimony, Roldan testified under oath that he was in a vehicle in the early morning hours of May 12,2012 on Jefferson Street in Worcester when his car was surrounded by others. He testified that he was not able to recognize any of the people who surrounded his vehicle. G. J. at 7. He also testified that after the incident the police showed him four different photo arrays. In response to a leading question from the prosecutor, he testified that he was not able to pick anyone out as having been involved in the incident.[3] G.J. at 10-11.
The court held a number of hearings on the case in the fall of 2012 and the winter and spring of 2013. The docket reflects, among other things, pretrial conferences held on October 29, 2012, December 28, 2012, and February 25, 2013. At the hearing on February 25, 2013, the case was scheduled for trial on April 22, 2013.
On April 22, 2013, the case came before the court for trial, but was continued to April 24, 2013 so that the court could complete another case then still on trial. The court, however, heard the parties on April 22, 2013 on defendant’s Motion to Exclude Non-Expert Opinion Testimony of Officer Duffy. That motion, which was filed with the court on April 22, 2013, sought to bar Worcester Police Officer Thomas Duffy (“Off. Duffy”) from giving an opinion that a person depicted in a surveillance video that recorded the alleged incident from a number of angles was the defendant. The Commonwealth stated its opposition.
On April 24, 2013, the Commonwealth filed a motion seeking a voir dire of Off. Duffy and opposing the defense motion to exclude Off. Duffy’s identification testimony. The court granted the motion for a voir dire, having watched the surveillance video previously, and held an evidentiary hearing at which Off. Duffy testified. After the hearing, the court granted the defense motion because the video was extremely blurry, the video did not show any identifying facial features of the people depicted in the video, theofficer’s identification was dependentonhis law enforcement contacts with the defendant that would be difficult to sanitize, and because the officer made certain assumptions based on others he believed were depicted in the video.
On April 25, 2013, the Commonwealth sought a stay of the trial'so it could pursue an interlocutory appeal. The Commonwealth requested the court to provide written findings regarding the exclusion of Off. Duffy’s identification testimony. The court stayed the trial and indulged the request for written findings. See Memorandum of Decision and Findings on Motion to Exclude Non-Expert Opinion Testimony of Officer Duffy (Apr. 25, 2013).
The Commonwealth chose not to take an appeal, seemingly abandoning its effort to call Off. Duffy to give an identification. The District Attorney, however, apparently still felt it needed an identification witness. In or about the late afternoon of April 25, 2013, the District Attorney disclosed to the defense that Roldan was going to identify Lora. This was the first time the defense learned that Roldan might make an identification, not coincidentally immediately after the court had excluded the identification by Off. Duffy.
Lora immediately sought discovery related to Roldan’s identification. Sometime later, the Commonwealth produced reports from Worcester Police Detective William Escobar (“Det. Escobar”), Off. Carmody and Off. Duffy. All three reports appear to have been recently written and all are unsigned by either the reporting officer or a reviewing officer. All three bear a footer at the bottom right of the form which states “PINarrativeSingle 01/15/13W.”
The report by Off. Escobar bears a “Date & Time” of “05/16/2013 09:24" and a ’’Last Edit Date" of “05/16/2013.” It indicates that on May 16, 2012, four days after the incident "with which Lora is charged, Det. Escobar interviewed Roldan and showed him “a photographic array,” which “consisted of eight photographs of individuals with similar physical characteristics.”[4] According to Det. Escobar’s report, Roldan looked at all eight photographs and initially did not identify anyone, but “(a]s he was walking out Mr. Roldan stopped and turned around and stated ‘I want to be honest with you I did recognize someone from those photos but I just can’t identify him I’m afraid for my family for my kids for my safety.’ ‘I saw what they can do.’ ” According to Det. Escobar’s report, Det. Escobar told Roldan that he (Det. Escobar) “respected his decision.” When asked to tell Det. Escobar who he recognized, Det. Escobar’s report states “Mr. Roldan then grabbed the photos and selected the photo of Jose Lora and stated this is him I’ll never forget his face he was the guy that was at my window.” Det. Escobar’s report goes on to state that “(o]n April 26 [, 2013]” he and ADA Westerman met with Roldan at *248 the Worcester County Courthouse and “Mr. Roldan stated that he had thought about this incident a lot and would now like to identify the suspect.” Although Det. Escobar’s report indicates that in May 2012 he had Roldan sign a photo array instruction sheet, that instruction sheet, according to the Commonwealth, no longer exists or cannot be located; nor does the Commonwealth have any law enforcement notes or reports from the May 2012 timeframe regarding Roldan’s alleged identification. See Commonwealth’s Response to Defendant’s Discovery Motion (May 30, 2013).
Off. Carmody’s report bears a “Date & Time” of “05/16/2013 16:57" and a ’’Last Edit Date" of “05/16/2013.” It states that “(a]s a result of the investigation into the shooting at 14 Jefferson st. [sic], Det. Will Escobar interviewed one of the victims, David Roland [sic].” The report does not disclose the date of the alleged interview. It also states, however, that “[s]ubsequent to this interview, Det Escobar and I had a conversation.” Again, the report does not list the date of the alleged conversation between Det. Escobar and Off. Carmody. Off. Carmody’s report states that Det. Escobar told him that Roldan viewed a photo array, did not pick anyone out, but afterward, told Det. Escobar he recognized Lora but did not pick him out because he (Roldan) was scared.[5]
Off. Duffy’s report reads almost identically to that of Off. Carmody, complete with the same misspelling of Roldan’s name. It bears a “Date & Time” of “05/16/2013 16:21” and a ’’Last Edit Date" of “05/16/2013.” Off. Duffy’s report states in full: “On May 16 2012 Officer [sic] Escobar conducted an interview of Victim David Roland [sic] in regards to an incident that occurred on May 12 2012. After the interview was conducted I had a conversation with officer Escobar. Officer Escobar informed me that the witness Roldan was shown a photo array. At the time he was shown the array he did not identify anyone. After the interview was conducted Roldan told officer Escobar that he did recognize one of the pictures, that of Jose Laura [sic]. Roldan went on to tell Officer Escobar that he did not want to pick him out due to the fact that he was fearful for his safety and that of his family.”
On May 30, 2013, the court held a hearing to appoint counsel for Roldan and to conduct a hearing under Commonwealth v. Martin, 423 Mass. 496 (1996), if necessary. See also Commonwealth v. Alicea, 464 Mass. 837, 840-43 (2013). After consultation with counsel, Roldan indicated he would waive his rights under the Fifth Amendment to the United States Constitution and testify at trial.
Upon learning that Roldan would be available at trial, defendant renewed his Motion to Exclude the Identification Testimony of David Roldan (docket #12) due to the Commonwealth’s failure to comply with Mass.R.Crim.P. 14(a)(l)(A)(viii) and its late disclosure of evidence, and provided the court with the reports from Det. Escobar, Off. Carmody and Off. Duffy, which had recently been produced and which are described above.[6] See, supra, at 4-6. Lora did not seek an evidentiary hearing on the motion. The court gave the Commonwealth until June 7, 2013 to file a response to Lora’s motion.
On June 6, 2013, the Commonwealth filed a two-page opposition to defendant’s motion to exclude Roldan’s identification testimony. It quotes the Reporter’s Notes to the effect that a court should only exclude testimony as a sanction for non-compliance with Rule 14’s automatic disclosure rules “when convinced that a failure to comply with an order was deliberate and prejudicial.” Mass.R.Crim.P. 14, Reporter’s Notes (Rev’d 2004). The Commonwealth also argues without an affidavit or further factual support that there was “no bad faith in failing to disclose the inculpatory evidence” and that “[t]he decision not to reveal Roldan’s ability to identify the defendant was made in the interests of safety, and not to prejudice the defendant.” (Emphasis added.) The Commonwealth does not contend that the failure to disclose Roldan’s prior identification was inadvertent or a matter of oversight. Instead, it claims it was a conscious “decision” that was “made” to insulate Roldan. The Commonwealth’s filing does not disclose who made this “decision.”
DISCUSSION
Rule 14(a) of the Massachusetts Rules of Criminal Procedure requires automatic production of certain discovery. As is relevant here, it states: “The prosecution shall disclose to the defense, and permit the defense to discover, inspect and copy, each of the following items and information at or prior to the pretrial conference, provided it is relevant to the case and is in the possession, custody or control of the prosecutor, persons under the prosecutor’s direction and control, or persons who have participated in investigating or evaluating the case and either regularly report to the prosecutor’s office or have done so in the case:... (viii) A summary of identification procedures, and all statements made in the presence of or by an identifying witness that are relevant to the issue of identity or to the fairness or accuracy of the identification procedures.” Mass.R.Crim.P. 14(a)(1)(A) (emphasis added).
In this case, there is no question that the information known to Det. Escobar, Off. Carmody and Off. Duffy about the identification by Roldan fell within the Commonwealth’s automatic disclosure obligation under Rule 14(a)(l)(A)(viii). The information about Roldan’s identification was a statement by an identifying witness (Roldan) “relevant to the issue of identify.” It was also “relevant ... to the fairness or accuracy of the identification procedures” employed by Off. Duffy. Off. Duffy, who came forward to offer an identification based on review of a blurry surveillance video as to which the court was required to conduct *249 an evidentiary hearing, was aware of, and presumably influenced by, Roldan’s identification although this was not disclosed to the defense or the court at the time of the evidentiary hearing. In addition, given Roldan’s testimony to the grand jury that he could not make an identification when shown photographs, Roldan’s prior identification was a prior inconsistent statement, strongly supporting the inference that Roldan lied (and may have been instructed or permitted by the police to lie) under oath to the grand jury. As such, Roldan’s prior identification was not just “inculpatory evidence,” as the Commonwealth suggests, but was exculpatory impeachment information, which undermined Roldan’s credibility and possibly the credibility of certain police officers. Roldan was one of only two civilian witnesses called to the grand jury and presumably will be called by the Commonwealth at trial. It was the obligation of the prosecutor to satisfy himself that all such documents and information had been gathered and produced. See, e.g., Mass.R.Crim.P. 14(a)(3); Kyles v. Whitley, 514 U.S. 419, 437 (1995) (“the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police”); Commonwealth v. Beal, 429 Mass. 530, 531-32 (1999).
Nothing in Rule 14(a) requires the defense to move for production of any of the information required to be disclosed as “automatic discovery.” It is supposed to be “automatic.” Thus, Rule 14(a)(1)(C) makes explicit that Rule 14(a)(1)(A) has “the force and effect of a court order.”
Nothing in Rule 14(a) allows the Commonwealth to withhold information required to be produced under the automatic discovery rules for its own good reasons, absent a protective order.
If the Commonwealth, or the police, had concerns about producing information about Roldan’s alleged identification, the Commonwealth could have sought a protective order under Mass.R.Crim.P. 14(a)(6). See also Mass.R.Crim.P. 14(a)(1)(C) (“if in the judgment of either party good cause exists for declining to make any of the disclosures set forth above [including the automatic disclosures required under Rule 14(a)(l)(A)(viii)], it may move for a protective order pursuant to subdivision (a)(6) and production of the item shall be stayed pending a ruling by the court”). It did not do so in this instance. What the Commonwealth may not do is unilaterally withhold production of automatic discovery.
After complying with its automatic discovery obligations, Rule 14 requires the Commonwealth to certify that it has done so. It states: “When a party has provided all discovery required by this rule ... it shall file with the court a Certificate of Compliance.” The Certificate of Compliance is supposed to state that “to the best of its knowledge and after reasonable inquiry, the party has disclosed and made available all items subject to discovery other than reports of experts, and shall identify each item provided.” Mass.R.Crim.P. 14(a)(3). Thereafter, if other discovery is provided, the Commonwealth may provide a supplemental certificate identifying the additional items provided. Id. Here, although it never included the required confirmation that “to the best of its knowledge and after reasonable inquiry” the Commonwealth had produced all discovery required by the automatic discovery rules, ADA Westerman filed two documents entitled “Certificate of Discovery Compliance,” one at arraignment on September 21, 2012 and one at the pretrial conference on October 29, 2012. These certificates were clearly designed to represent to the defense and the court that the Commonwealth had produced everything it was required to produce under the Rules of Criminal Procedure and, implicitly, that the prosecutor had made sufficient inquiry to assure that it had done so. Despite these representations, the Commonwealth did not disclose information about the alleged identification by Roldan.
Rule 14 makes clear that failure to provide discovery pursuant to the automatic discovery rules “may result in application of any sanctions permitted for non-compliance with a court order under subdivision 14(c).” Mass.R.Crim.P. 14(a)(1)(C). Such sanctions may include “a further order for discovery,” “a continuance,” or “such other order as [the court] deems just under the circumstances,” Mass.R.Crim.P. 14(c)(1), including “exclu[sion of] evidence for noncompliance with a discovery order issued or imposed pursuant to this rule.” Mass.R.Crim.P. 14(c)(2). See also Commonwealth v. Reynolds, 429 Mass. 388,398 (1999) (setting out factors to be considered in reviewing exclusion of an undisclosed witness); Mass.R.Crim.P. 14, Reporter’s Notes-Revised 2004 (“Although the court may exercise its general sanction power under subdivision (c)(2) to exclude evidence, it is generally better to grant each parly the freedom to present all relevant evidence at trial”).[7]
The court finds that the failure to turn over the information about the Roldan identification violated Rule 14(a)(l)(A)(viii) as well as the Commonwealth’s constitutional obligation to turn over exculpatoiy impeachment information. Moreover, the action was not merely inadvertent or accidental, but, the Commonwealth concedes, was a “decision” “made” for the benefit of the Commonwealth[8] or its perceived interests. See, e.g., Commonwealth v. Chappee, 397 Mass. 508, 514-19 (1986) (exclusion of defense experts upheld where defendant “deliberately withheld” disclosure from prosecutor). The Commonwealth’s choice to withhold the Roldan identification also explains why the Commonwealth would offer a police officer to provide a lay opinion about identify in a situation where the surveillance videotape provided no facial detail or other identifying characteristics sufficient to form the basis for such an opinion. Finally, I find that, *250 although in this context no prejudice is required for imposition of a sanction excluding certain testimony, the delayed disclosure of the information about Roldan’s alleged identification in fact prejudiced the defense. Due to the Commonwealth’s delay in producing information, no contemporaneous record was made or preserved of the identification procedure in May 2012, and no notes were preserved. Even the photo array instruction sheet referenced in Det. Escobar’s report and allegedly signed by Roldan is no longer available to be used by the defense to cross examine Roldan. A continuance is simply not an adequate remedy.[9] A continuance would allow the Commonwealth to profit from its conscious disregard of its duties under the automatic discovery rules and its constitutional obligations, to the detriment of the defense.
Accordingly, having considered the factors set out in Reynolds, 429 Mass, at 398, the court finds that exclusion of Roldan’s identification testimony is an appropriate sanction and is carefully “tailored to the injury suffered.” Commonwealth v. Frith, 458 Mass. 434, 443 (2010).
For these reasons, it is hereby ordered as follows:
ORDER
Defendant’s Motion to Exclude the Identification Testimony of David Roldan is ALLOWED. The Commonwealth will be permitted to call David Roldan as a witness at trial, but he will not be permitted to testify to any out-of-court or in-court identification of the defendant.

Lora is charged with assault with a dangerous weapon, to wit, a firearm (3 counts), malicious destruction of property over $250, possession of a loaded firearm, possession of a firearm after a prior qualifying conviction, and possession of ammunition after a prior qualifying conviction.

Nile Commonwealth submitted the grand jury testimony to the court in connection with its opposition to defendant’s motion to dismiss under Commonwealth v. McCarthy, 385 Mass. 160 (1982). See Docket #7. The court (McCann, J.) denied the McCarthy motion. The grand jury transcript is cited herein as “G.J. at [page].”

Nhe prosecutor’s question was somewhat ambiguous because it was phrased in the negative: “Q. And you were not able to identify any of the individuals involved in the incident through those photo arrays, correct? A. No, sir.” G.J. at 11. The prosecutor asked no follow-up questions about the showing of the photo arrays.

This report appears inconsistent with Lora’s sworn statement to the grand jury that the police had shown him four different photo arrays. G.J. at 10.

Off. Carmody’s knowledge of Roldan’s alleged identification is relevant here, among other reasons, because Off. Carmody testified before the grand juiy on the same day Roldan did. Off. Carmody presumably had discussions with the prosecutor in preparation for his and Roldan’s grand jury appearances. Off. Carmody appears to have been integral to the investigation of this case. He was the only police officer to testify before the grand juiy. He was also one of the two police officers to interview Lora. See Grand Juiy Ex. 10, submitted to the court in connection with its opposition to defendant’s motion to dismiss under Commonwealth v. McCarthy, 385 Mass. 160 (1982) (docket #7).

On May 30, 2013, the three reports were appended to the Motion to Exclude the Identification Testimony of David Roldan (docket #12).

The Commonwealth takes out of context the portion of the Reporter’s Notes that it quotes to the effect that “a court should only employ this sanction . . . when convinced that a failure to comply with an order was deliberate and prejudicial.” Commonwealth’s Opposition to Defendants’ [sic] Motion to Exclude Identification Testimony of David Roldan at 1, quoting Mass.R.Crim.P. 14, Reporter’s Notes-Revised 2004. This statement does not limit the availability of sanctions generally, but applies only to the possible exclusion of alibi evidence under Mass.R.Crim.P. 14(b)(1)(D). The relevant section provides in full: “However, in regard to alibi evidence, there is sufficient likelihood of abuse to require specifically empowering the court to exclude extrinsic alibi evidence other than the defendant’s testimony, and this is specifically authorized by section (b)(1)(D). A court should only employ this sanction, however, when convinced that a failure to comply with an order was deliberate and prejudicial to the Commonwealth.”

Here and in the remainder of this paragraph the phrase “the Commonwealth” is used in the larger sense to include the Worcester police. The court is not finding one way or the other whether the District Attorney’s Office was complicit in the decision to withhold information.

Nhis is not a case like Commonwealth v. Dranka, 46 Mass.App.Ct. 38, 40-43 (1998), cited by the Commonwealth, in which exclusion of a late-disclosed defense expert was overturned because the Commonwealth had enough time before trial to prepare for the new expert. Here, no amount of preparation will be able to restore the defendant to the position he would have been in if the police had made timely disclosure of the withheld information.